Richard A. ASH, on behalf of himself and all similarly situated shareholders of LFE Corporation, Appellant,

v.

LFE CORPORATION, Appellee.

No. 75–1217.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 12, 1975.

Decided Nov. 3, 1975.

Cletus P. Lyman, Lyman & Ash, Philadelphia, Pa., for appellant.

Thomas N. O'Neill, Jr., Francis M. Milone, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellee.

Before ALDISERT, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Plaintiff Richard Ash, a stockholder in defendant LFE Corporation, appeals from an order of the district court denying a preliminary and permanent injunction and dismissing his complaint.[1] Alleging jurisdiction under § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, Ash complained that a management proxy solicitation was misleading with respect to a proposed employee pension plan to be voted upon at LFE's September 12, 1974 annual meeting. Although the complaint was filed a week before the annual meeting was held, Ash did not seek a temporary restraining order. Thus the annual meeting was held as scheduled and an overwhelming number of proxies were voted in favor of the pension plan.[2] Thereafter, before the effective date for implementation of the approved plan, the court held a hearing on Ash's motion for a preliminary injunction against carrying it into effect. At that hearing Ash urged that with respect to the plan, the management proxy statement (1) was misleading and omitted material facts, in violation of SEC Proxy Rule 14a–9, 17 C.F.R. § 240.14a–9, and (2) was not clearly presented, as required by Rule 14a–5, 17 C.F.R. § 240.14a–5. The district court compressed the hearing on the preliminary and permanent injunctions, rejected Ash's contentions, and dismissed the complaint. This appeal followed. We affirm.

### I. THE RULE 14a–9 CLAIMS.

Ash contends that the proxy statement violated Rule 14a–9 in several respects. Some factual background is required for an appreciation of these contentions. LFE is a diversified manufacturer of process controls and metering equipment, incorporated in Delaware, with its principal executive office in Massachusetts. It operates various divisions which it has acquired over the years since its incorporation in 1946. In the past when it acquired a business, the pension or retirement programs in effect at the time of the acquisition were continued in force. As a result, in 1974 LFE employees were covered by four different retirement programs and a profit sharing plan. The management proposal for which proxies were solicited terminated all these programs and substituted a single pension plan for all employees except for employees in one subsidiary for whom retirement benefits were set forth in a collective bargaining agreement.

Since its incorporation LFE has never paid a dividend on its common stock. By virtue of loan agreements with financial institutions it is prohibited from paying such dividends except with the consent of certain lenders. Since its incorporation LFE has earned a profit in excess of $200,000 in only nine years, has lost money in eleven years, and has operated at approximately the break-even level in eight years. Although in 1974 it earned over a million dollars after taxes, the most profitable year since 1961, its stock was trading at or near all-time lows. It had a substantial retained earnings deficit.

The new pension plan provides pension benefits for management substantially in excess of those available under the previous arrangements, and at a substantially higher cost to LFE. Ash points out that the effect of the new plan is to saddle LFE with additional liability for

1. This suit was initially brought as a class action, on behalf of all LFE shareholders entitled to vote at the September 12 meeting. No timely motion for class action determination was filed with the district court, which treated the request as abandoned.

2. The record showed that 93.2% of the 1,336,-269 votes cast favored the management proposal (16E). Because the issue is not raised in this case, we need not consider whether an otherwise material deficiency in a proxy statement may be disregarded as immaterial if management has sufficient votes to approve its action without any votes from the minority. *See Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 385 n. 7, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

past services and additional future financial obligations. He contends that the improvidence of its adoption for a corporation with the LFE earnings history is not adequately disclosed.

■ The proxy statement states that the Board of Directors "has proposed" the plan. The first violation of Rule 14a–9 alleged by Ash pertains to that statement. He argues that it implies that the directors were the authors of the proposal and that they used care and judgment in recommending it, whereas in fact it was prepared by an outside pension plan consultant with the assistance of interested employees, and at least one director knew very little about its impact. This "misrepresentation" is said to be material because at least some of the directors were disinterested and would presumably carry more weight with the stockholders. The Supreme Court has defined a material defect for the purposes of Rule 14a–9 as one that might "have a significant *propensity* to affect the voting process . . . ." *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 384, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970) (emphasis in original). A cause of action cannot be predicated on a claimed defect so trivial that correction would not further the interests protected by the rule. It is common knowledge that a great deal of corporate decision-making is based upon the advice of outside consultants. Where there is no suggestion of any conflict of interest on the part of the consultants it does not seem to us that disclosure that the Board of Directors acted upon their advice would have any significant propensity to affect the voting process. The same is true of the participation of the interested employees. As we point out hereafter, the degree of director interest in the proposal is disclosed, and any rational stockholder must have known that the corporate management had a hand in its preparation. Certainly the representation in the proxy statement that the directors "proposed" the plan cannot be construed, as Ash seems to suggest, either as a representation that the Board's action

with respect to this piece of business was of a different character than normal board action, or as a representation of the state of familiarity of each director with details.

■ Ash next urges that the proxy statement fails to disclose fully and fairly certain directors' financial interests. He concedes that all information necessary to a determination of director interest is included, but urges that a lack of clarity is the equivalent in this instance of actual concealment. Certainly director interest in the pension proposal is material for the purposes of Rule 14a–9. But our review of the proxy statement convinces us that the disclosure of such interest was sufficient. As required by Schedule 14A, Item 7, 17 C.F.R. § 240.-14a–101, the proxy statement set forth in tabular form remuneration of directors and officers under existing contractual arrangements. That part of the proxy statement is required in connection with the annual election of directors. In a note to the column tabulating estimated annual retirement benefits under the existing arrangements there is a cross reference to the proposed new plan:

> The Company has proposed an amendment to this plan which is described in proposal no. 3.

Proposal No. 3 discusses the proposed plan in detail, and contains this specific disclosure:

> "*Pensions of Certain Directors and Officers* —Messrs. Roth, Kerzner, and Saint-Amour will be eligible for the amended plan and their annual pensions upon retiring at age 65, assuming continuation of last year's compensation rate and the same social security tax base, would be $31,137, $24,039, and $20,865 respectively."

Ash urges that the material set forth in the section on remuneration of directors should have been repeated in the discussion of proposal No. 3 and the simple arithmetical computation made. But Rule 14a–5(a), 17 C.F.R. § 240.14a–5(a), provides that information required by

more than one applicable item need not be repeated. We do not think the failure to make the subtraction which would give the exact difference between the old and new pension levels, clearly disclosed as substantial, can be considered material. The facts are disclosed prominently and candidly. We decline to hold that those responsible for the preparation of proxy solicitations must assume that stockholders cannot perform simple subtraction.

■ Ash next contends that the proxy statement is deficient in form in that the recommendation of management in favor of the new pension plan was not equally balanced with disclosures concerning its self-interest. Expressions of this so-called "equal prominence" rule may be found in *Mills v. Electric Autolite Co.*, 403 F.2d 429, 434 (7th Cir. 1968), *vacated and remanded,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), and *Beatty v. Bright,* 318 F.Supp. 169, 174 (S.D.Iowa 1970). But this Court has cautioned that "[r]easonable latitude in this area is important if nit-picking is not to become the name of the game." *Kohn v. American Metal Climax, Inc.,* 458 F.2d 255, 267 (3d Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972). Here the statement of interest preceded the recommendation of the Board of Directors by three pages and was quite prominent, being set forth in a separate paragraph with an italicized caption. The Board's recommendation appears not in italics but in a typeface slightly different from the main text. To hold that these differences violate the "equal prominence" rule would, indeed, be nit-picking.

■ Ash also argues that by omitting from the proxy statement financial data concerning the company's ability to pay the cost of increased pension benefits LFE violated Rule 14a–9. Rule 14a–

3(b), 17 C.F.R. § 240.14a–3(b) provides that any proxy solicited by management in connection with an annual meeting at which directors will be elected shall be preceded or accompanied by an annual report. The September 12, 1974 meeting was an annual meeting at which directors were elected, and the company's annual report was sent to shareholders. It contains consolidated balance sheets and consolidated statements of income, retained earnings and changes in financial position for the years 1973 and 1974, as well as five-year comparative financial data. The information which Ash claims to be necessary for informed shareholder action is in this report. If Rule 14a–9 were read to require that the same information be included in a proxy statement, Rule 14a–3(b) would be superfluous. The SEC has rejected a proposal that all proxy statements duplicate the financial data furnished to shareholders in the corporation's annual reports. *See* II L. Loss, Securities Regulation 886–87 (2d Ed. 1961). In this instance we see no reason for requiring more than the Commission deems appropriate.

■ The management pension plan allows benefits for employee services to the corporation prior to its adoption. This fact is clearly disclosed, but Ash urges that Rule 14a–9 was violated because the proxy solicitation did not advise stockholders that such past service credits are under Delaware law a gift, and ultra vires.[3] He does not contend that any dissenters' appraisal rights, required to be disclosed by Schedule 14A, Item 2, 17 C.F.R. § 240.14a–101, either exist or were omitted. Rather he contends that in his view, on the authority of *Fidanque v. American Maracaibo Co.,* 33 Del.Ch. 262, 92 A.2d 311 (Ch.1952), the plan may be subject to an ultra vires challenge. Not surprisingly, the company, pointing to § 122(15) of the Delaware General Corporation Law disputes this

---

**3.** Ash has litigated this issue as though a Rule 14a–5 question were involved. We do not understand how Ash's ultra vires allegation implicates Rule 14a–5 in any way, and confine ourselves to a Rule 14a–9 analysis.

legal contention.[4]  The *Fidanque* case dealt with an individual lifetime "consulting" contract with a former officer over seventy years old and suffering the effects of a stroke.  The court found that it was not genuinely for consulting services, but was a gift in appreciation for past services, and ultra vires.  The application of that case to a pension plan of company-wide application seems to us fanciful.

Ash has not in this action, or so far as we know elsewhere, sought an adjudication that the plan is ultra vires.  Under Delaware law, if the corporation did lack capacity to adopt the plan he remained free to challenge it despite the vote of the stockholders.  *See* 8 Del.Code Ann. tit. 8, § 124 (1975).  Without passing on the merits of the contention that granting pension plan credits for past service went beyond the power of the corporation, we hold that the proxy statement did not violate Rule 14a–9 when it failed to disclose a legal theory with which the corporation did not agree and which was never called to its attention.  The facts are disclosed.  If a shareholder concludes from those facts that the pension plan is a subterfuge for a gift, he can take appropriate action both at the stockholder meeting and thereafter.  No case has been called to our attention requiring disclosure of speculative issues of state corporation law in a proxy solicitation.

Thus we find no merit in any of the alleged violations of Rule 14a–9.  But Ash has one last arrow in his quiver.  He contends that in determining compliance of the proxy solicitation with the rule, the district court applied an erroneous legal standard by requiring a showing of scienter as an element of a prima facie case of non-compliance.  We point out that unlike *Gerstle v. Gamble-Skogmo, Inc.,* 478 F.2d 1281, 1298–1301 (2d Cir. 1973), which deals with a damage remedy implied from § 14(a), we are in this case concerned only with injunctive relief directed to the integrity of the exercise of stockholder franchise.  Whatever may be the rule with respect to scienter when other remedies such as damages or recission of a sale are sought, we have no hesitancy in recognizing that for prospective relief looking to the protection of the franchise the test for the purposes of Rule 14a–9 is the objective sufficiency of the disclosure.  Ash points to the language in the district court's opinion "I am not persuaded that there has been any attempt to 'bury' these facts or in any way to misrepresent the situation or mislead the shareholders."  This, he suggests, shows that the district court measured not the objective sufficiency of the disclosure but management's objective good faith.  But the quote relied upon must be read in the context of the court's entire discussion which we quote in the margin.[5]

---

4. Del.Code Ann. tit. 8, § 122(15) (1975) provides:

"Every corporation created under this chapter shall have power to:

. . . . .

(15) Pay pensions and establish and carry out pension, profit sharing, stock option, stock purchase, stock bonus, retirement, benefit, incentive and compensation plans, trusts and provisions for any or all of its directors, officers, and employees, and for any or all of the directors, officers, and employees of its subsidiaries; . . . ."

5. "It is true that some of the facts which plaintiff cites as being particularly relevant to a shareholder vote on the proposal have not been emphasized.  But I am not persuaded that there has been any attempt to 'bury' these facts or in any way to misrepresent the situation or mislead the shareholders.  Rather, I am convinced that this proxy statement represents a rather pedestrian attempt to describe the salient features of the proposed new pension plan, together with enough information about the existing pension programs to make possible a comparison of the two.  The truly significant facts, namely, the amount of proposed pension benefits, and the additional cost of those benefits to both the company and the employees, are quite clearly set forth.  I do not believe it was incumbent upon the defendant to state arguments which might be advanced in support of, or in opposition to, the proposal."

(112a).

We do not read in this discussion anything other than a determination that the disclosures in the proxy statement were objectively sufficient.

## II.  THE RULE 14a–5 CLAIM.

▮ In his pretrial memorandum in the district court Ash urged, as a separate and alternative ground for finding a § 14(a) violation,[6] that the proxy statement violated Rule 14a–5(a) which provides:

> § 240.14a–5 Presentation of information in proxy statement.
>
> (a) The information included in the proxy statement shall be *clearly presented* and the statements made shall be divided into groups according to subject matter and the various groups of statements shall be preceded by appropriate headings.  The order of items and sub-items in the schedule need not be followed.  Where practicable and appropriate, the information shall be presented in tabular form.  All amounts shall be stated in figures.  Information required by more than one applicable item need not be repeated.  No statement need be made in response to any item or sub-item which is inapplicable.

17 C.F.R. § 240.14a–5(a) (emphasis supplied).

This "clearly presented" requirement, as a separate ground for objecting to a proxy statement, appears to be a matter of first impression.  Ash's argument is that a proxy statement may truthfully disclose all information required by law and may thus not be technically misleading in the sense of conveying any false or inaccurate impression, but may nevertheless be so obfuscating as to defeat its purpose of conveying information to lay shareholders.

It is unfortunately true that legal draftsmanship often does leave much to be desired.  Undoubtedly, a careful stylist could have improved upon the communicative quality of the LFE proxy statement.  Indeed, the district court observed that Ash's alternative version is in many ways a distinct improvement.  But not every corporate counsel is a Benjamin Cardozo, or even a Richard Ash.  The district court found that "the truly significant facts are quite clearly set forth."  Although the court's opinion made no express reference to Rule 14a–5, this finding indicates that the Rule 14a–5 contention was considered.  We agree with the district court that the significant facts are quite clearly set forth.  We do not rule out the possibility that a proxy statement could be drafted so poorly that the "clearly presented" requirement of Rule 14a–5 would provide a predicate for relief.  But it would not serve the purposes of § 14(a) to engage the federal judges as teachers of legal draftsmanship with the mission of improving the style and form of proxy statements, for it is not at all clear that we would do the job any better than the SEC.

The judgment of the district court will be affirmed.

---

**6.** LFE argues that because Ash omitted the Rule 14a–5 allegation from his complaint, he is foreclosed from pressing the issue on appeal for the first time.  Ash did raise the issue in his pre-trial memoranda, however, and while the district court does not in terms advert to this issue, we believe it treated the matter as timely raised and disposed of it on the merits.