Richard A. ASH and Cletus P. Lyman, on behalf of themselves and all similarly situated shareholders of G. P. Putnam's Sons

v.

G. P. PUTNAM'S SONS and MCA Inc.

Civ. A. No. 75–3591.

United States District Court, E. D. Pennsylvania.

March 18, 1976.

As Amended April 9 and May 25, 1976.

Lyman & Ash, Philadelphia, Pa., for plaintiffs.

Dechert Price & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM

GORBEY, District Judge.

This suit was instituted on December 15, 1975, by two shareholders of G. P. Putnam's Sons (Putnam), allegedly on behalf of themselves and shareholders of Putnam entitled to vote at a shareholders' meeting which was held on December 18, 1975. At the meeting, a proposal was adopted upon favorable vote of the holders of more than two-thirds of Putnam's stock to merge Putnam with the wholly owned subsidiary of MCA, Incorporated (MCA). On December 19, 1975, a certificate of merger was filed with New York authorities, and Putnam is now a wholly owned subsidiary of MCA.

Plaintiffs allege that the proxy statement/prospectus (the proxy materials) mailed to Putnam shareholders in connection with the December 18th meeting were materially false and misleading in violation of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 and Rules 10b–5 and 14a–9 thereunder. More specifically, plaintiffs have extracted two one sentence statements from two pages of an approximately ninety-one page prospectus and labeled these statements "materially misleading". The first such statement at page 28 reads: "Historically, theatrical motion pictures have fared well in periods of recession." Plaintiffs have claimed that this is an untrue statement even though the prospectus follows that up with "for example, industry statistics for 1974 show a 25 percent increase in domestic box office receipts over the previous year." The second such statement, appearing at page 29, states: "Efforts to improve license fees as well as cost con-

trols should result in improved profit margins." Plaintiffs claim that:

"This prediction is unfounded, slanted, one sided and flies in the face of the following facts, statement of which was omitted from the proxy statement:

(i) Costs have recently been increasing, specifically, performers in successful programs have been demanding and achieving novation of their contracts with MCA, obtaining higher compensation;

(ii) Performers in such situations have great bargaining power because they are nearly indispensable to the continued success of such programs;

(iii) Networks have adopted a hold-the-line attitude on increases in licensing fees, and the president of CBS stated, during the summer of 1975, that CBS will not subsidize a compensation increase paid by producers to performers which, in CBS's judgment, is not justified."

(Plaintiffs' complaint, pages 5–6)

Although it seems incredible to me that plaintiffs and other shareholders would be misled by not specifically being told that "costs have recently been increasing" and that performers in successful programs have great bargaining power because they are indispensable to the continued success of such programs and that CBS, or anyone else for that matter, will not increase payments which are not justified. These appear to me to be very general facts which can be found on the front page of our daily newspapers on a regular basis. However, for purposes of a motion to dismiss under Rule 12, I must assume that at least plaintiffs were possibly misled by these omissions. As for the two statements which plaintiffs claim to be untrue for the purpose of ruling on defendants' motion to dismiss, I shall assume that these statements are in fact untrue. *DiVito v. Greenstein,* 55 F.R.D. 58 (E.D.Pa.1972). I must further take notice that those statements which plaintiffs point out as

having been omitted were in fact omitted. What defendants have requested, and what I must agree with, is that I should decide that there is no possibility that the alleged misstatements are material in any way. The Supreme Court has stated that it is material and only material misrepresentations or omissions which can form the basis for liability. It is well settled that there can be no liability predicated upon defects in proxy statements so trivial as to be immaterial. *Mills v. Electric Auto Light Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). The Court further stated the facts misstated or withheld must be material in the sense that a reasonable investor might have considered them important in making the decision. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). The Third Circuit stated in *Ash v. LFE Corp.,* 525 F.2d 215, that such a material defect has been defined as one that has a significant propensity to effect the voting process. From reading plaintiffs' complaint and the prospectus, I am unable to conclude that any of the alleged misstatements or omissions are material within the meaning of the securities laws.

Out of an overabundance of caution, and recognizing that it was possible that I may have missed something, I scheduled a conference on March 3, 1976, at which both plaintiffs, who are attorneys representing themselves, were present. The defendants likewise were adequately represented by counsel. At the outset of the conference I advised plaintiffs that I was inclined to grant defendants' motion to dismiss. I told plaintiffs that I would like to hear from them in case they had anything to add to what was contained in their complaint or in their brief memorandum in opposition to the motion to dismiss which might reveal some material misstatements or omissions, or that possibly they could indicate something within their papers which I may have been overlooking. Plaintiff, Richard Ash, replied that he was shocked that I might state that he filed a frivolous complaint. He then refused to discuss

the entire matter any further and stated that I should proceed to dismiss the complaint although he would not agree to such dismissal. Later that day, plaintiffs forwarded to my office a proposed form of order dismissing the complaint. Since I have still not been able to glean any material misstatements or omissions from plaintiffs' papers, and since plaintiffs are not inclined to assist me in finding any, I must therefore dismiss their complaint as I was originally inclined so to do.

The Supreme Court has noted that the opportunity for vexatious litigation is great within the securities field. In *Blue Chips Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Court stated:

> "There has been widespread recognition that litigation under Rule 10b–5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general. . . .
>
> Judge Friendly in commenting on another aspect of Rule 10b–5 litigation has referred to the possibility that unduly expansive imposition of civil liability 'will lead to large judgments, payable in the last analysis by innocent investors, for the benefit of speculators and their lawyers . . . .' *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 867 (CA2 1968) (concurring opinion) . . .
>
> We believe that the concern expressed for the danger of vexatious litigation which could result from a widely expanded class of plaintiffs under Rule 10b–5 is founded in something more substantial than the common complaint of the many defendants who would prefer avoiding lawsuits entirely to either settling them or trying them. These concerns have two largely separate grounds.
>
> The first of these concerns is that in the field of federal securities laws governing disclosure of information even a complaint which by objective standards may have very little chance of

success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being resolved against him by dismissal or summary judgment. The very pendence of the lawsuit may frustrate or delay normal business activity of the defendant which is totally unrelated to the lawsuit. See, *e. g.,* Sargent, The SEC and the Individual Investor: Restoring His Confidence in the Market, 60 Va.L.Rev. 533, 562–572 (1974)

. . .

> Congress itself recognized the potential for nuisance or 'strike' suits in this type of litigation, and in the 1934 Act amended § 11 of the 1933 Act to provide that:
>
>> 'In any suit under this or any other section of this title the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorneys' fees . . . .' (48 Stat. 881, 908.)
>
> Senator Fletcher, Chairman of the Senate Banking and Finance Committee, in introducing Title II of the 1934 Act on the floor of the Senate, stated in explaining the amendment to § 11(e) that '[t]his amendment is the most important of all.' 78 Cong.Rec. 8669. Among its purposes was to provide 'a defense against blackmail suits.' *Ibid.*"

Plaintiffs further stated in their complaint that the proxy statement and prospectus was materially misleading in that it failed to state certain facts which are unfavorable to its business, namely:

"(i) The current television season has brought failures of many primetime series, especially new ones, and such failures have been unusually great;

(ii) For the first time in history, overall ratings of primetime television have declined;

(iii) In response to the above, network purchasers are seeking new ways of obtaining programming, including new suppliers and more flexible contract

terms, including reduction or elimination of the traditional guaranteed purchase of a set number of installments of series."

It appears that plaintiffs would have the defendant publish in its prospectus every fact about its industry which could in any way pertain to or effect the financial outlook of that industry. I do not doubt that if defendant had included such facts in its prospectus plaintiffs might have considered them materially misleading and sued defendants for creating too gloomy a picture. The Third Circuit has stated:

"[N]ot every corporate counsel is a Benjamin Cardozo, or even a Richard Ash . . . But it would not serve the purposes of § 14(a) to engage the federal judges as teachers of legal draftsmanship with the mission of improving the style and form of proxy statements, for it is not at all clear that we would do the job any better than the SEC." *Ash v. LFE Corp., supra.*

A company must be permitted certain parameters within which it can intelligently attempt to advise its shareholders of the true status of its financial outlook and our laws should not be permitted to be interpreted so that no matter what is contained in a prospectus the company can be attacked.

For the reasons stated above, plaintiffs' complaint is dismissed with prejudice.