**Edward P. JOHNSON, Sr., et al., Plaintiffs,**

v.

**E.C. ERNST, INC., et al., Defendants.**

**Civ. A. No. 83–3398.**

United States District Court, District of Columbia.

Aug. 15, 1985.

Patricia N. Blair, Linda B. Blair, Ginsberg, Feldman and Briss, Washington, D.C., for plaintiffs.

Frank C. Razzano, Joseph Ferraro, Shea & Gould, Washington, D.C., Martin I. Shelton, Shea & Gould, New York City, for defendant E.C. Ernst, Inc.

Charles S. Fax, Porter, Wright, Morris & Arthur, Washington, D.C., for the Philadelphia Bourse.

## MEMORANDUM ORDER DENYING SUMMARY JUDGMENT

BARRINGTON D. PARKER, District Judge.

This matter is before the Court on plaintiffs' motion for summary judgment. Plaintiffs, Edward P. Johnson, Sr. and Edward P. Johnson, Jr., are shareholders of defendant E.C. Ernst, Inc. ("Ernst"). They are suing Ernst, its board of directors and The Philadelphia Bourse, Inc. ("Bourse"). The Bourse is a majority · shareholder of Ernst.

The plaintiffs bring their complaint under the Securities and Exchange Act of 1934 ("the Act"). They allege that Ernst, its directors and the Bourse, as aiders and abettors of those defendants, violated Section 14(a) of the Act and Securities and Exchange Commission ("SEC") Rule 14a–9, promulgated thereunder. They charge the defendants with issuing a Proxy Statement and Solicitation ("Proxy Statement") to Ernst shareholders containing materially false and misleading statements. The plaintiffs, as Ernst shareholders, seek a declaratory judgment and an injunction preventing the defendants from implementing the proxy proposals until the allegedly false and misleading statements are corrected through a resolicitation of the proxy.

The matter has been fully briefed by the parties. Because there are essential material facts in dispute, the Court concludes that summary judgment is inappropriate and the plaintiffs' motion should be denied.

The reasons for that conclusion are set out in the discussion which follows.

## I.

### BACKGROUND

This action arises out of a Proxy Statement and Solicitation mailed to Ernst's shareholders on October 11, 1983 and supplemented November 9, 1983. The Proxy Statement notified those shareholders of a special meeting to be held on November 22, 1983 [1] and solicited their votes on a proposal to amend Ernst's Articles of Incorporation to authorize additional shares of common stock at decreased par value and to approve the so-called Bourse Agreement providing for the issuance of newly authorized common stock to Bourse. If the proposal was adopted, the equity interests of the present shareholders would be markedly decreased and Bourse's equity interests in Ernst would be substantial.

Ernst is an electrical construction and contracting firm. The plaintiffs were officers of Ernst until removed from their positions in 1978. On December 1, 1978, Ernst filed a petition for Chapter XI bankruptcy with the Bankruptcy Court in the Southern District of New York. Since that date, it has been operating as a debtor-in-possession. Ernst is currently attempting to obtain that Court's approval of a Plan of Arrangement ("the Plan") which would allow it to emerge from bankruptcy.

One continuing financial problem for Ernst had been the refusal of its surety, the Travelers Indemnity Co. ("Travelers"), to provide performance and payment bonds for Ernst. That refusal had the adverse effect of preventing Ernst from obtaining new contracts. As a result, in 1979, Ernst and Travelers entered into an agreement whereby, among other things, Travelers agreed to issue surety bonds for new contracts and to guarantee a line of credit,

secured by an interest in all of Ernst's assets. Ernst also granted Travelers an option ("the Option") to purchase all of its authorized but unissued stock at a specified price level. In 1981, a Plan of Arrangement was approved by Ernst's creditors subject to approval by the Bankruptcy Court.

The Plan required financing and the Bourse became its source of financing. Travelers was necessarily involved in the discussions because it was both Ernst's surety and also a significant creditor. In August, 1983, Bourse, Ernst and Travelers entered into several agreements relative to the financing of the Plan. In one agreement Travelers assigned the Option and $832,112.40 in indebtedness to the Bourse in exchange for Bourse's indemnification of Ernst's surety bonds. Another agreement related to the issuance of bonds after emergence from bankruptcy and the settlement of Ernst's post-petition indebtedness to Travelers.

A third agreement was made between Ernst and the Bourse ("the Bourse Agreement"). Under the agreement, Bourse would purchase 32 million shares of newly authorized common stock with a par value of $.01 for $1 million and 15,000 shares of cumulative, convertible preferred stock for $1.5 million. Bourse also agreed to arrange a $3 million line of credit for Ernst. In order to effectuate the Bourse Agreement, Ernst shareholders were required to approve an amendment of the Articles of Incorporation to authorize the issuance of up to 100 million shares of common stock and to decrease the par value of the stock from $.40 per share to $.01 per share. The Proxy Statement sought shareholder approval of the amendment to the Articles of Incorporation and of the Bourse Agreement.

On October 4, 1983, the Bourse exercised the option to purchase all of the authorized

---

**1.** This Court previously denied plaintiffs' application for a temporary restraining order to enjoin the November 22, 1983 meeting, but required that the plaintiffs be given a 10-day notice prior to the implementation of any plan

and the unissued common stock of Ernst.[2] The Option was exercised at the par value of stock, $.40 per share by Ernst agreeing to cancel the $832,112.40 in debt assigned to Bourse by Travelers. Prior to the exercise of the Option, plaintiffs owned approximately 20 percent of the outstanding stock of Ernst. After the exercise of the Option, Bourse owned approximately 52 percent of Ernst's stock and the plaintiffs' equity was correspondingly reduced to less than 10 percent. If the Bourse Agreement is implemented, Bourse will own approximately 93 percent of the outstanding shares of Ernst stock and plaintiffs will own approximately two percent of Ernst shares.

Since the Amendment to the Articles and the Bourse Agreement were approved in the special shareholders' meeting, the Plan needs only to be confirmed by the Bankruptcy Court. A confirmation hearing was scheduled for July 10, 1985. However, a favorable disposition of the pending motion for summary judgment in the instant case would invalidate the Proxy Statement, which is the partial basis for the financing of the Plan. The Bankruptcy Court proceedings have been postponed pending a ruling on the plaintiffs' motion for summary judgment.

## II.

### ANALYSIS

Plaintiffs contend that the Proxy Statement violated SEC Rule 14a–9.[3] The Rule provides that:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a–9(a). "The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." *J.I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964) (finding a private right of action under § 14(a)).

In considering the plaintiffs' motion for summary judgment, the Court is called upon to determine whether particular statements or omissions in the Ernst Proxy Statement are false or misleading and material as claimed by the plaintiffs. The Supreme Court addressed the issue of materiality in the context of § 14(a) in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). In speaking for the Court, Justice Marshall determined that a statement is material if it substantially affects the total amount of information given to the shareholder.

An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. This standard is fully consistent with *Mills* general de-

---

resulting from the proxy. Such notice was given on June 28, 1985.

**2.** On that date, there were 4 million shares authorized and 1,919,719 shares outstanding. Thus, Bourse purchased 2,080,281 shares of stock.

**3.** Rule 14a–9 was promulgated pursuant to § 14(a) of the Securities and Exchange Act of 1934. 15 U.S.C. § 78n(a). That section states:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

scription of materiality as a requirement that 'the defect have a significant *propensity* to affect the voting process.' It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.

*Id.* at 449, 96 S.Ct. at 2132 (emphasis in original).[4]

 The *Northway* opinion pointed out that the standard for determining materiality involves analyzing facts and making a sensitive judgment; thus it is extremely difficult to resolve that question on a summary judgment motion.

The issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts. In considering whether summary judgment on the issue is appropriate, we must bear in mind that the underlying objective facts, which will often be free from dispute, are merely the starting point for the ultimate determination of materiality. The determination requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and

these assessments are peculiarly ones for the trier of fact. Only if the established omissions are 'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality' is the ultimate issue of materiality appropriately resolved 'as a matter of law' by summary judgment.

*Id.* at 450, 96 S.Ct. at 2132 (quoting *Johns Hopkins University v. Hutton,* 422 F.2d 1124, 1129 (4th Cir.1970)). Thus, plaintiffs bear a very heavy burden of demonstrating materiality in terms of a motion for summary judgment. *Mills v. Esmark, Inc.,* 544 F.Supp. 1275, 1293 n. 36 (N.D.Ill.1982) ("the issue of materiality ... is ordinarily inappropriate for summary judgment"). The question of materiality is one that usually should be determined by the trier of fact. *See, e.g., S.E.C. v. Falstaff Brewing Corp.,* 629 F.2d 62, 76 (D.C.Cir.1980), *cert. denied sub nom. Kalmonovitz v. S.E.C.,* 449 U.S. 1012, 101 S.Ct. 569, 66 L.Ed.2d 471 (1980); *Swanson v. Wabash, Inc.,* 577 F.Supp. 1308, 1313 & n. 4 (N.D.Ill. 1983). Utilizing the *Northway* standard, an examination of the alleged misstatements or omissions is in order.

### 1. Bourse's Ownership of 52 Percent of Ernst Stock

Plaintiffs contend that the Proxy Statement[5] contained false and misleading statements regarding Bourse's exercise of the Option and the subsequent ownership of 52 percent of Ernst stock. They claim that the Option was not properly exercised. Thus, they contend that the statement to the contrary, Proxy Statement at 13, that "[Bourse] now holds approximately 52 per-

---

**4.** The Supreme Court in *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), determined that a showing of materiality is sufficient to demonstrate a violation of § 14(a) without requiring a plaintiff to demonstrate that shareholders actually relied on the misstatements in the proxy when voting. The causal connection need not be demonstrated where the plaintiff demonstrates that "the proxy solicitation itself ... was an essential link in the accomplishment of the transaction." *Id.* at 385, 90 S.Ct. at 622. Since the Ernst Proxy Statement is undisputably linked to the action which

resulted from the special shareholders' meeting, there is no question that the causation requirement is satisfied.

Moreover, a shareholder need not prove that he or she relied on the misleading statements in order to have standing to assert a cause of action under § 14(a). *Cowin v. Bresler,* 741 F.2d 410, 426–27 (D.C.Cir.1984).

**5.** The Proxy Statement is Exhibit A to defendant's opposition to the motion for summary judgment.

cent of the Company's Common Stock," was false and misleading. Plaintiffs contend that the alleged improper exercise of the Option, which was not disclosed, is further exacerbated in the Proxy Statement by the assertion that as the controlling shareholder, Bourse intended to vote its shares in favor of the Bourse Agreement. Proxy Statement at 33.

The plaintiffs argue that the unambiguous language of the Option was violated when it was exercised. The relevant language is that the Option may be exercised "at a price per share of common stock equal to the then prevailing market price per share on the date of the exercise or the par value thereof, whichever is greater." Plaintiffs' motion for summary judgment at Exhibit A. It is uncontroverted that the price paid for the shares purchased under the Option was $.40 per share, the par value of the stock.[6] However, the Plaintiffs contend that the prevailing market price on that date was at least $.10 per share higher than par value. They have demonstrated that on October 4, 1983, when the Option was exercised, Ernst shares were quoted on the Over-the-Counter Market at ½ bid and ⅞ asked.

Defendants advance several arguments which may affect the materiality of the statement, preventing a resolution of this matter on summary judgment: that within the context of the agreement, the Option was exercised at the proper price because the market price per share on the day of the transaction was not relevant to what a willing buyer would pay for a *controlling* block of Ernst stock; that it was not the intent of the framers of the agreement to be bound by the strict language of the agreement; and that the term "prevailing market price per share" could be equated with the concept of "fair market value per share." Dep. of Joseph Griffin, Chairman of Ernst, at 42. They also contend that "fair market value" should be controlling as to whether the Option was exercised at

the correct price because "an asking price is never indicative of the value of the stock, nor is a bid, for that matter." Griffin dep. at 53. In sum, the defendants urge that the exercise of the Option should be evaluated on the basis of the actual transaction—a sale of a controlling block of stock in a company in which, *relatively*, there were few market transactions of its stock.

On its face, "prevailing market price per share" is not a difficult concept to grasp.

The [prevailing] market price of Health-Chem Common, of course, was a matter of public knowledge that anyone could acquire by reading a newspaper with an Amex listing. Defendants were entitled to assume that reasonable shareholders would know the prevailing price of their stock.

*Goldberger v. Baker*, 442 F.Supp. 659, 667 (S.D.N.Y.1977). *See also Clagett v. Hutchison*, 583 F.2d 1259, 1261 (4th Cir.1978). Thus, it appears that from the face of the Option language, Bourse was required to pay for *each* share of stock it purchased the greater of the par value or the market price of a share of stock on that day. It failed to do so.

Defendants contend that there is, in fact, a wide range of opinion as to the meaning of the term "prevailing market price" both in the finance community and among the formulators of the agreement. Griffin dep. at 42; Fishbein dep. at 76. As a result, they contend that in evaluating the transaction they utilized a standard, fair market value, which most accurately represented the true intentions of the parties. The question then becomes whether the difference between the two standards is a material misstatement or omission.

It appears to this Court that the question of materiality is not one that can be decided as a matter of law on summary judgment. Initially, defendants did disclose, through the Bear, Stearns & Co. ("Bear, Stearns") opinion letter, *see infra* at 162–63, the term "fair market value" as the basis for

---

**6.** In exchange for the stock, and upon exercise of the Option, Bourse cancelled $832,112.40 in indebtedness assigned from Travelers. 2,080,-

281 shares were purchased under the Option, which is equivalent to $.40 per share.

its evaluation. Given the parties' understanding of the language of the Option and the circumstances surrounding its exercise—the purchase of *all* of the outstanding shares of stock—the Court cannot determine as a matter of law, that the statement regarding the exercise of the Option and the omission regarding the two standards were material.[7] *Cf. Pavlidis v. New England Patriots Football Club, Inc.*, 737 F.2d 1227, 1235 (1st Cir.1984) ("remand to the district court to consider whether the issuance price of the voting shares was material and should have been disclosed in the proxy statement"); *Allyn Corp. v. Hartford Nat'l Corp.*, ¶ 98,646 Fed.Secur. L.Rptr. (CCH) (D.Conn.1982) (court making findings of fact and conclusions of law regarding materiality).

Moreover, even if the Option was not properly exercised, the Court is not convinced that Bourse would no longer own the stock it "purchased" under the Option. The Court would have no hesitancy in concluding that if Bourse did not own the stock, it would be a material misstatement to represent that it, as a controlling shareholder, would vote in favor of a particular proposal. *See Gould v. America-Hawaiian S.S. Co.*, 535 F.2d 761, 771–73 (3rd Cir.1976); *Wetter v. Caesars World, Inc.*, 541 F.Supp. 68, 72 (D.N.J.1982). The District of Columbia Code does not provide any clear guidance as to whether, absent a payment of full consideration, a party does own stock. *See* D.C.Code §§ 29–313; 29–316; 29–317; 29–322; 29–327 (1981). However, this circuit in a case dealing with the illegal sale of treasury shares in exchange for promissory notes held that

> The sale of stock at issue here was illegal. The illegality does not make the sale void from the outset, but merely makes it voidable. The defect in the sale would have been cured had the $990,000 purchase price been paid in full.

*Public Investment Ltd. v. Bandeirante Corp.*, 740 F.2d 1222, 1234 (D.C.Cir.1984). Thus, the question of whether the failure to pay prevailing market price is material is not appropriately resolved on summary judgment because the sale of stock under the Option apparently would not be void for failure to pay full consideration.

### 2. The Bear, Stearns Opinion Letter

In the Proxy Statement, there was a presentation and discussion of the opinion of Bear, Stearns relative to the exercise of the Option.

> Prior to the issuance to the Bourse of shares of Common Stock upon the exercise of the Option, the Company sought the opinion of the investment banking firm of Bear, Stearns & Co. In the view of Bear, Stearns & Co. expressed in its letter dated September 30, 1983 there is an extremely limited over-the-counter market for shares of the Company's Common Stock, quotations reflected in that market cannot be taken as representative of bid or asked prices for more than a small number of shares in each instance and, therefore, such prices would not be indicative of what a willing buyer would pay at this time for the number of shares proposed to be purchased pursuant to the Option in a single transaction. Accordingly, the Company requested Bear, Stearns & Co.'s opinion as to whether the fair market value of the 2,080,281 shares proposed to be purchased by the Bourse under the terms of the Option was less than or greater than their aggregate par value of $832,112.40. In the opinion of Bear, Stearns & Co., the fair market value of such shares was less than their aggregate par value of $832,112.40.

Proxy Statement at 13. Plaintiffs contend that the Bear, Stearns letter involves three material misstatements or omissions: its failure to disclose that it never considered either "prevailing market price," its failure to disclose the role of Ernst management in the formulation of the opinion, and an alleged misstatement regarding the market for Ernst stock.

be disclosed. *Ash v. LFE Corp.*, 525 F.2d 215, 220 (3rd Cir.1975).

---

7. The Court considers this information as more than a speculative legal theory which need not

The deposition testimony of a Bear, Stearns official clearly revealed that the company did not evaluate the Option on the basis of "prevailing market price per share," but instead utilized "fair market value." Fishbein dep. at 76. However, the opinion, as presented in the Proxy Statement also specifically states that Bear, Stearns rendered its opinion on the basis of "fair market value." Mr. Fishbein, in his deposition, indicated that Bear, Stearns was somewhat "uncomfortable" with the language in the Option itself. Fishbein dep. at 34. Therefore, when it formulated its opinion, Bear, Stearns was explicit with regard to the basis for its conclusion. However, what may be material in terms of altering the total mix of information to the shareholders, is the omission of an explanation identifying the difference, if any, between the Option language and the opinion language. Although Bear, Stearns set forth the "fair market value" standard in its opinion, it may be material that the letter did not juxtapose the two terms and did not explain that the opinion was not based on the language used in the Option. It would be difficult to make such a determination in ruling on a summary judgment motion.

Further, there is no basis on which to award summary judgment regarding the failure to disclose the role of Ernst management in formulating the opinion letter. The deposition testimony indicates that Bear, Stearns reached its own independent decision regarding the language of the opinion. Fishbein dep. at 34. In fact, Bear, Stearns still endorses the conclusion expressed in its letter. *Id.* at 78.

Whether the Proxy Statement, through the Opinion letter, misrepresented the level of trading of Ernst stock cannot be resolved on summary judgment. There is a factual dispute as to the relevant time period to be considered in determining the number of shares bought and sold. Moreover, the context of the opinion letter is in contention as defendants argue that one cannot compare the amount of stock purchased through the Option with the range of the amount of shares traded on a daily basis.

### 3. Commitments to Ernst Officers

Plaintiffs contend that the Proxy Statement omitted material facts regarding various commitments to officers of Ernst. The first commitment was that Joseph Griffin, Chairman of the Board of Ernst, was promised by Howard Butcher III, President and Director of Bourse, that he would remain as Chairman for as long as he lived. It appears that there was some sort of informal arrangement to that effect. Griffin dep. at 37. The Proxy Statement firmly indicates that neither Ernst "nor any of its directors or officers has any agreements *or understandings* with the Bourse or any of its directors or officers." Proxy Statement at 26 (emphasis added). Whether the failure to mention an "understanding" that was not formalized is a material omission cannot be resolved as a matter of law.

A second claimed omission is an intention to provide senior Ernst officers with some of the stock obtained in the Bourse Agreement. However, that "plan" is not a firm agreement. Butcher dep. at 15–16. Defendants need not have disclosed tentative plans in the Proxy Statement. *Missouri Portland Cement Co. v. H.K. Porter, Co., Inc.*, 535 F.2d 388, 398 (8th Cir.1976); *Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482, 1491 (D.Del.1984).

In any event, the question of whether or not there were such commitments, formal or otherwise, their scope and their effect—if any at all, cannot be resolved on the present record now before the Court. Additional testimony is needed to clarify the matter.

### 4. Miscellaneous Failures to Disclose

Plaintiffs assert that the Proxy Statement misrepresented the terms of the Option by implying, through the terms of the Bear, Stearns opinion, that it could be exercised for the total block of stock, rather than that it could be exercised to purchase only a smaller block of stock. Failure to state what *could* have been pur-

chased under the Option, rather than what actually was purchased, is not material as a matter of law as long as the Option provided that all of the stock could have been purchased. To the extent that the Bear, Stearns opinion reflected an evaluation of the transaction based on a larger block of stock, the opinion may be relevant to the question of whether the failure to disclose the actual Option language in conjunction with the opinion is material. Standing alone, the language in the Proxy Statement concerning the transfer of the entire block of shares is not a basis for granting summary judgment in favor of the plaintiffs.

█ Plaintiffs contend that the Proxy Statement is misleading because it states that the Bourse agreement was the "result of arm's length negotiations." Proxy Statement at 20. They contend this is untrue because there is a close personal relationship between Ernst's Chairman Griffin and Bourse's Butcher. Plaintiffs have failed to demonstrate either that the friendship between those individuals caused the negotiations between Bourse and Ernst to be at anything but arm's length or that there was an obligation to disclose the friendship in the Proxy Statement.

The final alleged material omission is the failure to disclose both that Bourse would benefit as an unsecured creditor under the Plan of Arrangement and that it caused the Plan to be approved. Defendants assert that Bourse, as an unsecured creditor, could only cast one vote in favor of the Plan of Arrangement regardless of the amount of unsecured debt it had acquired. As such, it alone could not have caused the Plan to be approved. Defendants also assert that the Proxy Statement reveals Bourse's status as an unsecured creditor and the amount which all unsecured creditors would recover under the Plan. Thus, any omission, at this point, cannot be deemed material.

In sum and on basis of the above, the Court determines that there are disputed material facts and that otherwise the state of record does not warrant entry of sum-

mary judgment. Accordingly, it is this 15th day of August, 1985,

### ORDERED

That plaintiffs' motion for partial summary judgment is denied.