393 F.2d 865
 3 A.L.R.Fed. 280
 George P. PAPPAS et al.
v.
Bernard L. MOSS, Harrison J. Britton, Leo N. Sokol, Philip
B. Brooks and Hydromatic, Inc., Philip B. Brooks, As Trustee
of Hydromatic Employees Profit Sharing and Retirement Trust
and Edward Nathan, Bernard L. Moss, Appellant in#16405
Harrison J. Britton, Appellant in #16406 Philip B. Brooks,
Appellant in $16407 Edward Nathan, Appellant in #16408 Leo
N. Sokol, Appellant in #16409 Hydromatics, Inc., Appellant
in #16410 The Niagara Wire Weaving Company Limited,
Appellant in #16411.
 Nos. 16405-16411.
 United States Court of Appeals Third Circuit.
 Argued Dec. 5, 1967.
Decided April 9, 1968.
 
 George I. Harris, Burke & Burke, New York City, Edward T. Kenyon, Bourne, Schmid, Burke & Noll, Summit, N.J., Robert D. Wilson, New York City, of counsel, for Niagara Wire Weaving Co., Limited (appellant in No. 16411 and for appellees in Nos. 16405 to 16410).
 Bernard G. Segal, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Clapp & Eisenberg, Newark, N.J., Samuel D. Slade, William T. Hangley, Philadelphia, Pa., of counsel, for Moss, Britton, Brooks, Nathan, Sokol and Hydromatics, Inc. (appellants in Nos. 16405 to 16410 and for appellee in No. 16411).
 McGlynn, Stein & Eberiel, Newark, N.J., for appellant Hydromatics, Inc., in No. 16,410, Roger H. McGlynn, Newark, N.J., on the brief.
 Philip A. Loomis, Jr., General Counsel, David Ferber, Sol., Ellwood L. Englander, Asst. General Counsel, Theodore Sonde, Atty., Securities and Exchange Commission, Washington, D.C., for Securities and Exchange Commission, amici curiae.
 OPINION OF THE COURT Before KALODNER, GANEY and SEITZ, Circuit Judges.
 SEITZ, Circuit Judge.
 
 
 1
 One of several plaintiffs ('plaintiff') in a stockholder's derivative action on behalf of Hydromatics, Inc. ('Hydromatics'), a New Jersey corporation, appeals from the judgment entered by the district court after a lengthy final hearing before the court. The defendant directors ('defendants') and Hydromatics also appeal.
 
 
 2
 Plaintiffs below asserted claims against the defendants under the New Jersey common law and under the Securities Exchange Act of 1934 as amended (15 U.S.C.A. 78aa). Each claim is based on alleged wrongful acts of the defendants in connection with the sale of 64,534 additional shares of Hydromatics stock to themselves and to outsiders (who were not sued) in private placement transactions at a price so far below the contemporaneous fair value for the shares as to amount to fraud. The district court denied relief on the common law claim and granted partial monetary relief on the federal claim. See Pappas v. Moss, 257 F.Supp. 345 (D.N.J.1966). On appeal plaintiff seeks additional relief on the federal claim and full relief under the common law cause. By their appeal defendants seek to be absolved of any liability. The other issues raised by the various parties need not be resolved at this time in view of our conclusions with respect to the principal claims of the parties.
 
 
 3
 Prior to the issuance of the shares here involved, Hydromatics, Inc. had 500,000 authorized shares of common stock of which some 288,000 shares were issued and outstanding, plus 30,000 shares reserved for issuance under a stock option plan. In 1960 all of these shares were listed for trading on the American Stock Exchange.
 
 
 4
 At all times here pertinent the defendants constituted the board of directors of Hydromatics and all except one were officers thereof. The one non-officer director was also named as a defendant in his capacity as trustee of the Company's Profit-Sharing and Retirement Trust. Prior to the stock sale in dispute, the defendants owned in the aggregate 170,957 shares. In addition, the trustee of the Profit Sharing Trust held 1,100 shares. Thus, the individual defendants controlled 172,057 out of a total of 288,000 outstanding shares.
 
 
 5
 By resolution dated December 21, 1961, the defendants by board action unanimously authorized the issuance of up to 100,000 shares of Hydromatics common stock at a price of $6.00 pershare to themselves and to a limited number of additional purchasers. The purchasers agreed to hold the shares for investment purposes only, but it was provided that the corporation would cause such shares to be registered within eighteen months following the date of issuance. In the period between December 28, 1961, and January 3, 1962, the sales under attack were consummated. Thereafter this action was filed. Still later the stockholders were asked to ratify the sales under attack, although the directors' resolution did not require stockholder action . This course was apparently taken solely because the American Stock Exchange had indicated that such a vote would be considered in determining whether it would authorize the listing of such shares. The stockholders voted to ratify the sale. We turn to the grounds of appeal.
 
 
 6
 The district court decided that plaintiffs below had the burden of proving fraud in order to succeed on the common law claim and found that they failed so to do. Plaintiff here contends that the district court committed error in placing the burden on plaintiffs and in ruling that the issue was one of fraud.
 
 
 7
 Plaintiff does not challenge the general power of a board of directors of a New Jersey corporation to authorize, without stockholder approval, the sale of its authorized and unissued shares to non-directors. Plaintiff does challenge the power of a board to authorize the sale of such stock to its members without stockholder approval. We think a board of directors has the power to authorize a sale of its stock to one of its members, without stockholder approval, where, as here, its Certificate of Incorporation contains a provision permitting transactions between 'interested' directors and their board.[1] We further conclude, but not without some concern, that under New Jersey law, at least where there is a provision in the Certificate of the type here described, the directors have the power to sell stock to themselves without stockholder approval even though all members are purchasers. In such a situation, however, the burden is on the interested directors to show by clear and convincing proof that the transaction was honest, fair and reasonable. Contrary to the implication in the district court's opinion, we think this burden was not shifted because of the Certificate provision in question. The very nature of the transaction here is such that it calls for pervasive scrutiny. Under less compelling facts the New Jersey Supreme Court in Abeles v. Adams Engineering Co., Inc., 35 N.J. 411, 173 A.2d 246 (1961), adopted the approach we have here taken.
 
 
 8
 It follows in our view, that unless there was effective stockholder ratification of the stock sales here involved, the defendant directors were required to shoulder the burden we have described.[2]
 
 
 9
 We come to the crucial issue as to whether there was an effective ratification by the stockholders. We think the controlling law on this point is clearly stated in the opinion of the Supreme Court of New Jersey in Brundage v. New Jersey Zinc Co., 48 N.J. 450, 226 A.2d 585 (1967). Although that case involved the fairness of the terms of a merger, we think it is applicable, a fortiori, to our situation. The New Jersey court decided that where, as here, a majority of shares are held by those 'interested' in effectuating the merger, there can be no ratification, at least in the sense that it transfers to the attacking party the burden of showing fraud. And this was the holding even though a substantial majority of the shares held by independent minority stockholders were voted in favor of ratification.
 
 
 10
 There having been no effective ratification, the stock sales must be evaluated as though there had been no stockholder action. In that posture, the New Jersey law, as we find it, required the defendants to establish by clear and convincing proof that the transaction was honest, fair and reasonable. Because it erroneously determined that there had been an effective ratification, the district court did not evaluate the evidence in the light of the correct legal principle. To the extent, therefore, that the judgment below dismissed the common law claim it must be reversed and the matter remanded for a determination based on the principles here announced. Compare Abeles v. Adams Engineering Co., Inc., above; Brundage v. New Jersey Zinc Co., above.
 
 
 11
 We next consider plaintiff's federal claims against the defendants. The first is based on their alleged violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. 78j(b) and its implementing Rule 10b-5 (17 C.F.R.240.10b-5), which provides:
 
 
 12
 'It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
 
 
 13
 '(1) to employ any device, scheme, or artifice to defraud,
 
 
 14
 '(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 
 
 15
 '(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.'
 
 
 16
 Defendants do not claim that the proof failed to support at least one of the requirements contained in the introductory language of the Rule. They also tacitly agree that purchases as well as sales of securities were established within the meaning of those terms of the Rule. The remaining issue under the Rule is whether there was a violation of one or more of the numbered paragraphs. The district court judge did not make any finding as to whether there was what we shall call a direct violation of the Rule. Rather, the court held that there could be a violation of 10b-5 where the defendants used manipulative or deceptive devices. He found that there was such a violation arising from the fact that the directors and officers of Hydromatics purchased some of the shares before their participation in this distribution of stock was completed. He determined that this conduct constituted a manipulative or deceptive device as defined in Rule 10b-6, 17 C.F.R. 240.10b-6(a) (2). In effect, therefore, he took the violation of 10b-6 and incorporated it into 10b-5 and thereby found a violation of 10b-5. He then entered a substantial money judgment against the defendants in favor of the corporation.
 
 
 17
 We agree with both the defendants and the Securities Exchange Commission ('Commission')[3] that the district court was in error in adopting this approach. We say this because the defendants here did not fall into any of the classes which are prohibited by 10b-6 from making purchases in such a situation. We need not consider whether the result would be different were some other distribution in fact in progress, because there is no record evidence of such a second distribution. The money judgment entered by the district court on the basis of its erroneous application of Rule 10b-6 must be vacated.
 
 
 18
 Plaintiff contends that there was substantial proof and indeed findings of fact which showed a direct violation of Rule 10b-5 arising from fraud and misrepresentations by defendants. Defendants argue that even if the plaintiff's allegations concerning fraud and misrepresentation were proved, they could not constitute violations of the Rule. They contend that 'violations (of 10b-5) can occur only where the alleged injury could have been prevented by the injured parties had they known the true facts.' Defendants insist that under the language of the Rule there must be reliance by a party with standing before it is applicable. Their reasoning goes this way: a corporation can only act through its agents' all of its agents (directors) here were aware of the true facts, ergo, the corporation was not deceived.
 
 
 19
 Given evidence sufficient to satisfy the preliminary requirements of the Rule, we think that where, as here, a board of directors is alleged to have caused their corporation to sell its stock to them and others at a fraudulently low price, a violation of Rule 10b-5 is asserted. Certainly a fraud in the act of selling a security of the required kind is asserted. The only question which remains is whether the act of fraud involved is of the type embraced within the statute and the Rule. It is contended that proof of 'deception' is required to bring the claim within the statute and implementing Rule. Obviously the definition of 'deception' may vary with the circumstances. But if a 'deception' is required in the present context, it is fairly found by viewing this fraud as though the 'independent' stockholders were standing in the place of the defrauded corporate entity at the time the original resolution authorizing the stock sales was passed. Indeed, as the district court found, that resolution contained at least two material misrepresentations of fact. Certainly the deception of the independent stockholders is no less real because, 'formalistically', the corporate entity was the victim of the fraud. The same is true of the fact that the fraud may go unredressed because those in a position to sue lack actual knowledge of the fraud.
 
 
 20
 The defendants seem to agree that in situations where stockholder approval of a purchase or sale of stock is necessary, material misstatements of fact made or fraud committed by a unanimous board would nevertheless by embraced by Rule 10b-5. They would apparently take a similar position if a minority of the board of directors were misled. We think these references as to their position indicate that their construction of Rule 10b-5 is untenable. It exalts form over substance. Indeed, it seems to suggest that there is an inverse relationship between the application of the Rule and the number of directors participating in a fraud on its corporation. Finally, it restricts the application of the Rule in a way which is at odds with its basic purpose. See McClure v. Borne Chem. Co., 292 F.2d 824 (3rd Cir.), cert. denied, 368 U.S. 939, 82 S.Ct. 382, 7 L.Ed.2d 339 (1961).
 
 
 21
 The defendants rely on Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952) and O'Neill v. Maytag, 339 F.2d 764 (2nd Cir. 1964). The appellant says that both cases are distinguishable, and that, in any event, Ruckle v. Roto American Corp., 339 F.2d 24 (2nd Cir. 1964) supports its position here. The Commission points out that it has been suggested that Vine v. Beneficial Finance, 374 F.2d 627 (2nd Cir. 1967) and Brod & Co., v. Perlow,375 F.2d 393 (2nd Cir. 1967) have undermined the Birnbaum and O'Neill interpretation of Rule 10b-5. We do not attempt to resolve such matters because we are satisfied that our analysis of Rule 10b-5 calls for the conclusion that the corporation has standing, albeit derivatively here, to maintain an action under Rule 10b-5 in the present circumstances. See Dasho v. The Susquehanna Corp., 380 F.2d 262 (7th Cir.), cert. denied, subnom., Bard v. Dasho, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967); compare Surowitz v. Hilton Hotels, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).
 
 
 22
 The district court did not decide, at least explicitly, whether the evidence showed a direct violation of Rule 10b-5. We recognize that it can be argued that when the district court assessed damages to implement its erroneous finding of a violation of Rule 10b-5, it nevertheless necessarily determined that the shares were sold below their fair value. But it is not clear on what basis it found a 20% Discount from current market price was justifiable, or, indeed, why it started with market price. We think the district court rather than this court should decide the matter directly in the first instance. The fair value of the stock at the critical dates was obviously a most relevant factor in resolving several issues.
 
 
 23
 We note another matter for consideration by the district court. Certain misrepresentations of fact found by the district court appear in both the minutes of the directors' meeting of December 21 authorizing the sale of the shares and in the rpoxy material issued to obtain stock holder ratification. Other important factual issues are not explicitly resolved on this record. We think the district court should determine all facts which it considers relevant in whole or in part to its decision on the claimed violations of Rule 10b-5.
 
 
 24
 Plaintiffs below also asserted a claim under Section 16(b) of the Securities Exchange Act for short-swing profits. The district court found that the Profit Sharing Trust realized a profit when it sold 1,100 shares of Hydromatics stock on the Exchange between December 27, 1961 and January 2, 1962, and when, on December 29, 1961, it purchased from the corporation a like amount of such stock. The district court assessed damages against defendants, Moss and Britton, the administrative committee of the Trust, on the ground that they were 'beneficiary members' of the Trust. These defendants contend that they were not liable because the Trust was exempt under Rule 16a-8(g)(3), 17 C.F.R. 240 16a-8(g)(3).[4] It is not disputed that the trust is a 'pension and retirement plan holding securities of the issuer whose employees generally are the beneficiaries of the plan.' Consequently, if these particular defendants carried the burden of proving that the Trust was covered by the exemption, they were not liable. The Commission agrees.[5] However, the district court seems not to have considered the exemption provision of the Rule. Since the case is to be remanded, this too will be an issue for the district court to resolve if other matters are decided in a way which require the court to reach it. The judgments against the defendants, Moss and Britton, will therefore be vacated without prejudice, except as here decided.
 
 
 25
 The district court also found the defendant, Sokol, liable under Rule 16b for profits realized by him when he sold 200 shares of Hydromatic stock on December 22 and 26, 1961, at 10 5/8 and 11 per share respectively, and then purchased a like amount from the corporation on December 28, 1961, at $6.00 per share. Sokol does not challenge the finding of a violation. However, he contends that he settled his liability in full with the company by a payment and the application of money due him from the corporation for services rendered. The district court entered judgment against Sokol and in doing so gave him credit only for the payment made. The court apparently thought that a memorandum of the transaction showing full satisfaction of his liability was not entitled to belief because it was not signed and was prepared after Sokol left the corporation. The court overlooked the fact that there was apparently uncontradicted testimony by a corporate official, which if believed, supported Sokol's contention as to the various items. At a minimum, as the Commission notes, the district court should have determined the reasonable value of the additional consideration allegedly received by the corporation and allowed it as a credit. The assumed infirmities in the memorandum were not decisive of this issue.
 
 
 26
 Consequently, to the extent the judgment against Sokol is based on a violation of Rule 16b, it must be vacated without prejudice so that, if later reached, it can be decided in accordance with our analysis. This is not a case involving any question as to the right to settle a claim for value less than the amount of the statutory liability.
 
 
 27
 Since the judgment entered below must be vacated in its entirety, it follows that the allowance of counsel fees and costs must also be set aside. These matters will of course be proper issues for the consideration of the district court after the merits of the case are settled. The same is true with respect to the issues raised concerning 'interest.'
 
 
 28
 We call attention, as did the district court, to the fact that under 15 U.S.C.A. 78bb(a), there may not be duplicate recoveries on the same claim. Finally, we think the district court may exercise a sound discretion in deciding whether the record needs any supplementation in order to decide the matter on remand.
 
 
 29
 The judgment of the district court is reversed and the matter remanded for proceedings consistent with this opinion.
 
 
 
 [1]
 We need not consider who has the burden and the nature thereof under New Jersey law in a case where the 'interested' director transaction is approved by a majority of disinterested directors after full disclosure
 
 
 [2]
 We do not understand plaintiff to argue that, even assuming an effective ratification, the district court's finding upon which he based his 'no fraud' conclusion was clearly erroneous
 
 
 [3]
 The Commission was granted leave to file a brief as Amicus Curiae
 
 
 [4]
 '(g) No report shall be required by any person, whether or not otherwise subject to the requirement of filing reports under section 16(a) with respect to his indirect interest in portfolio securities held by * * *
 '(3) a pension or retirement plan holding securities of an issuer whose employees generally are the beneficiaries of the plan, * * *'
 
 
 [5]
 This litigation has caused the Commission to undertake to change Rule 16a-8(g)(3) with respect to the scope of the exemption. See Securities Exchange Act Release No. 8106 (32 F.Reg.P. 9238), June 29, 1967