Nina ALTMAN, Plaintiff,

v.

Richard L. KNIGHT et al., Defendants.

No. 75 Civ. 5614 (JMC).

United States District Court,
S. D. New York.

April 26, 1977.

As Amended May 2, 1977.

**310**

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff, by Lester L. Levy, Benedict Wolf, Marian Probst, New York City, of counsel.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants John B. M. Place, John W. Brooks, William H. Kendall, William E. Quigley, Robert V. Roosa, Donald D. Geary, Jr., Charles H. Kraft and Edson L. Foster, by Donald I. Strauber, Richard J. Ney, Marcia E. Carpeni, Terry A. Thompson, Steven Novinson, New York City, of counsel.

Friedman & Gass, New York City, for defendant IU International Corp., by Arthur S. Friedman, New York City, of counsel.

Gasperini & Savage, New York City, for defendant Anaconda Co., by Edwin L. Gasperini, Terry G. Partin, Suzanne B. Antippas, James C. Sweeney, New York City, of counsel.

## OPINION

CANNELLA, District Judge.

Motion by defendants[1] to dismiss the complaint herein for failure to state a claim upon which relief can be granted, is hereby

---

1. Richard L. Knight, J. W. Wilcock, James D. Farley, John E. Tenge, James H. Evans, James L. Marvin and Robert C. Weed were never served and take no part in the instant motions.

granted. Fed.R.Civ.P. 12(b)(6). Motions to dismiss the complaint for failure to make a demand upon the board of directors before bringing suit, Fed.R.Civ.P. 23.1, and for failure to state separate claims in separate counts of the complaint, Fed.R.Civ.P. 10(b), are hereby dismissed as moot.

Plaintiff's derivative claims stem from the purchase by Anaconda Company ("Anaconda"), the corporation on whose behalf the action is brought, of Walworth Company ("Walworth"), a subsidiary of defendant IU International Corp. ("IU"). It is alleged that the individual defendants cause this acquisition solely to defeat a tender offer by Crane Co. and not for any valid business purpose. If successful, the tender offer allegedly would have threatened their positions as directors and/or officers of Anaconda. Plaintiff claims that, in connection with the Walworth purchase, the individual defendants stated that the acquisition would serve a valid business purpose whereas in actuality it was entered into solely to block the Crane tender offer, a material misstatement in violation of § 14(e) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78n(e).

Plaintiff also alleges that the agreed purchase price for Walworth, $25 million cash and a five-year promissory note in the amount of approximately $15 million, was grossly excessive and amounted to corporate waste. It is contended that such acts further harmed Anaconda by exposing it to potential claims by Anaconda shareholders who were deprived of the opportunity to participate in the Crane tender offer at its original terms.

Based upon these allegations, plaintiff sues under § 10(b) of the Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, § 14(e) of the Act, 15 U.S.C. § 78n(e), and the common law. Plaintiff's § 10(b) claim is predicated on Anaconda's "sale" to IU of the $15 million note, which the complaint characterizes as a "security." Because the Court finds that, despite the five-year maturity date of the note, the context requires that it not be considered a security, see § 3(a)(10) of the Act, 15 U.S.C. § 78c(a)(10), the allegations fail to state a claim under § 10(b) of the Act. Plaintiff's § 14(e) claim also falls because the Walworth acquisition itself did not constitute "manipulation or deception" within the meaning of the antifraud provisions of the Act, see *Santa Fe Indus. v. Green,* —— U.S. ——, ——, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), and any damages Anaconda suffered (or will suffer) result from the purchase, not any statements made in connection therewith. The federal claim being deficient, the pendent claim is also dismissed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

*The Section 10(b) Claim*

■ Section 10(b) of the Act makes it unlawful for a person "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device . . . ." Consequently, a *sine qua non* of any claim brought pursuant to this section is the presence of a "security" in the challenged scheme. Realizing this, plaintiff claims that the note given[2] in partial payment for Walworth qualifies as a security.

The Second Circuit's most recent expression of whether a particular note is a security is found in *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126 (2d Cir. 1976) (Friendly, J.). There, the plaintiff bank had purchased notes from a brokerage house, allegedly in reliance upon the defendant's opinion as to the firm's financial condition. Judge Friendly declined to follow the "commercial/consumer-investment dichotomy" approach of other

---

**2.** Defendants claim, and a copy of the note affirms, that the note was signed by DDR Corporation, a subsidiary of Anaconda, and was guaranteed by Anaconda. The Court need not decide what bearing this would have on Anaconda's standing to bring a § 10(b) action, were the Court to find that the note is a security. *See,* however, Rosenman, Colin, Kaye, Petschek, Freund & Emil, CCH Fed.Sec.L.Rep. [1974–1975 Transfer Binder] ¶ 79,987, at 84,541 (SEC no-action letter).

circuits, *C.N.S. Enterprises, Inc. v. G. & G. Enterprises, Inc.,* 508 F.2d 1354 (7th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975); *McClure v. First Nat'l Bank of Lubbock,* 497 F.2d 490 (5th Cir. 1974), *cert. denied,* 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975); *Bellah v. First Nat'l Bank of Hereford,* 495 F.2d 1109 (5th Cir. 1974); *Lino v. City Investing Co.,* 487 F.2d 689 (3d Cir. 1973), viewing dimly the prospects of meaningful criteria for decision-making under this standard. The court chose instead to emphasize the statutory language itself. Observing that the 1934 Act includes within its definition of "security," "any note . . . [excepting one] which has a maturity at the time of issuance of not exceeding nine months," 544 F.2d at 1137, *quoting* 15 U.S.C. § 78c(a)(10), the court stated:

> A party asserting that a note of more than nine months maturity is not within the 1934 Act . . . has the burden of showing that "the context otherwise *requires*." (Emphasis supplied.) One can readily think of many cases where it does—the note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a "character" loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized). When a note does not bear a strong family resemblance to these examples and has a maturity date exceeding nine months, § 10(b) of the 1934 Act should generally be held to apply. . . . A more desirable solution would be for Congress to change the exclusions to encompass "a note or other evidence of indebtedness issued in a mercantile transaction," as is proposed in the ALI's Federal Securities Code, § 297(b)(3), . . . [but] [s]o long as the statutes remain as they have been for over forty years, courts had bet-

ter not depart from their words without strong support . . . . .

*Id.* at 1137–38 (footnotes omitted).

Like the ALI proposal, Judge Friendly's examples of cases in which a note would not constitute a security all occur in the "mercantile" setting. The court of appeals found that the notes in question in *Touche Ross* clearly did not. For example, their terms took up almost nine typewritten pages and "bore scant resemblance to the standard forms used in commercial lending," *id.* at 1138; both parties knew that the New York Stock Exchange would view the notes' proceeds as equity capital; rather than a one-shot deal, the notes formed part of a larger financing operation by the brokerage house. Moreover, the bank was motivated to purchase the notes in order to expand its business by cultivating a relationship with the brokerage firm.

By contrast, the note issued in payment for Walworth is a one-page, ordinary promissory note. As a purchase money note, it is similar in many aspects to a "note delivered in consumer financing." IU was not interested in investing in Anaconda, but would have preferred a cash payment: the note was a cash substitute. The Court therefore finds that defendants have met their burden of showing that, notwithstanding the five-year maturity date of the note, it is not a security because "the context otherwise requires."

Support for the Court's conclusion is found in *Emisco Indus., Inc. v. Pro's Inc.,* 543 F.2d 38 (7th Cir. 1976), a case decided on strikingly similar facts. In *Emisco,* as here, a corporation purchased the assets of another corporation, tendering as part of the consideration a five-year promissory note. Claiming that defendants had made material misrepresentations regarding the transaction, the purchaser-corporation brought suit under § 10(b) of the Act. On defendant's motion to dismiss the complaint it was necessary to determine whether the note constituted a "security" as that term is defined in § 3(a)(10). The Seventh Circuit interpreted *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051,

44 L.Ed.2d 621 (1975), as drawing "a distinction . . . between an investment transaction on the one hand and a commercial or consumer transaction on the other when construing the term 'security,'" 543 F.2d at 39, and as reaffirming the "commercial/consumer-investment dichotomy" standard. In deciding that the promissory note in *Emisco* was not a security, the court stated:

> When analyzed economically the facts dictate that the note was accepted as a cash substitute. Pro's was interested in selling the business assets of its Parade Division to Grossman. Acceptance of the note in lieu of cash was more in the nature of a loan to Grossman of the purchase money than an investment in the note. From this aspect, the transaction vis-à-vis Pro's was clearly a commercial one . . ..

*Id.* at 40. *But see Movielab, Inc. v. Berkey Photo, Inc.,* 452 F.2d 662, (2d Cir. 1971) (*per curiam*).

In sum, the context in which the Anaconda note was issued *requires* that it not be encompassed within the Act's definition of a security despite its more than nine-month duration. Therefore, because the challenged scheme did not occur "in connection with the purchase or sale of any security," plaintiff's § 10(b) claim cannot stand.

### The Section 14(e) Claim

Section 14(e) of the Act reads almost identically to § 10(b), except for the "in connection with" clause. Whereas a § 10(b) violation must occur "in connection with the purchase or sale of any security," to constitute a § 14(e) violation, the deception or manipulation must occur "in connection with any tender offer . . . or any solicitation of security holders in opposition to or in favor of any such offer . . .." Also as in § 10(b) actions, a § 14(e) claim will fail unless the alleged damage occurred by reason of the statutory violation.

Plaintiff herein claims that the defendants violated § 14(e) when they caused Anaconda's acquisition of Walworth in order to block the Crane tender offer. Plaintiff also alleges that in connection therewith the individual defendants made material misrepresentations regarding the reason for the acquisition.[3]

After the United States Supreme Court decision in *Santa Fe Indus., Inc. v. Green,* —— U.S. ——, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), it is clear that Anaconda's acquisition of Walworth, even if for no

---

**3.** The amended complaint reads in pertinent part:

> 20. In an attempt to defeat the Crane bid and in order to safeguard their personal positions with Anaconda, and not for any valid business purpose of Anaconda, the individual defendants caused Anaconda to enter into an agreement with IU which provides for the purchase by Anaconda of the Walworth Company from IU for $40 million in cash and securities.
>
> 21. In connection with that transaction, the individual defendants made, and caused Anaconda to make, untrue statements of material fact and omitted, and caused Anaconda to omit, to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading and engaged in fraudulent, deceptive and manipulative acts or practices in connection with the Crane tender offer, and in connection with the aforesaid sale of securities, in that said defendants falsely stated that the acquisition was entered into for a proper business purpose of Anaconda and that it was not entered into to block the Crane tender offer, when in fact the sole reason for the acquisition was an attempt to prevent the consummation of the Crane offer.
>
> 22. In their attempt to defeat the Crane tender offer, the individual defendants caused Anaconda to enter into the aforesaid transaction with IU, which transaction was grossly unfair, unjust and inequitable to Anaconda, as defendants knew. The purchase price of $40 million was grossly excessive and constituted a waste and gift of the assets of Anaconda. The individual defendants' decision to have Anaconda purchase Walworth at that price was not a decision of valid business judgment on behalf of Anaconda, but was made to block the Crane tender offer, to perpetuate themselves in office, and to safeguard their personal positions. The agreement constitutes a fraud, a breach of trust and such a concious [sic] abuse of discretion by the individual defendants as to work a manifest gross wrong, harm and injury to Anaconda.

valid business purpose, does not alone constitute a manipulative or deceptive device, as is necessary to state a claim under § 14(e) of the Act. The Court stressed in *Santa Fe* that the antifraud provisions of the 1934 Act are directed at obtaining full disclosure: "once full and fair disclosure has occurred, the fairness of the terms of the transaction is at most a tangential concern of the statute." *Id.* at ——, 97 S.Ct. at 1303. Therefore, the Court reaffirmed its conclusion that "Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement." *Id.* at ——, 97 S.Ct. at 1304, *quoting Superintendent of Ins. v. Bankers Life & Cas. Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). The same limitation would apply to § 14(e) given the similarity of purpose of the two sections.

What plaintiff's claim boils down to, insofar as the acquisition itself is concerned, is that the individual defendants, aided and abetted by defendant IU, breached their fiduciary duties to Anaconda when they voted to purchase Walworth for purely selfish motives at a grossly exaggerated price. This is precisely the kind of claim the Supreme Court in *Santa Fe* felt should be decided under state corporate law. *See* —— U.S. at ——, 97 S.Ct. 1292.

The allegations of material misrepresentations made by the individual defendants in connection with the Walworth acquisition falter for another reason: these misstatements could not possibly have caused the injury alleged.[4] *See, e. g., Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Cohen v. Colvin,* 266 F.Supp. 677, 685 (S.D.N.Y.1967) (Tenney, J.). Because shareholder approval was not required for the Walworth acquisition, the corporate waste alleged in the complaint could only have been the result of the acquisition itself, not any statements made as to its purpose. The same reasoning is applicable to Anaconda's exposure to liability to shareholders deprived of the opportunity to tender their Anaconda shares to Crane Co. at the original tender offer price. In that the alleged misstatements have no causal relationship to the alleged injuries suffered by Anaconda, the misstatements cannot serve as the basis for a claim pursuant to § 14(e) of the Act. The claim is therefore dismissed.[5]

## CONCLUSION

The Court finds that the complaint herein fails to state a claim under either § 10(b) or § 14(e) of the Securities Exchange Act of 1934. The federal claims having been dismissed before trial, there is no justification for retaining the pendent state law claim. Accordingly, the complaint is dismissed as to defendants Place, Brooks, Kendall, Quigley, Roosa, Geary, Kraft, Foster, IU and Anaconda.

SO ORDERED.

---

4. The Court doubts that these allegations of fraud could stand in any event. According to Fed.R.Civ.P. 9(b), "[i]n all averments of fraud . . . ., the circumstances constituting fraud . . . . shall be stated with particularity." Paragraph 21 of the Amended Complaint is defective in that it fails to apprise the defendants of the time and place of the statements, the persons who made them and the persons to whom they were made. *See, e. g., Heller v. Thomson & McKinnon Auchincloss Kohlmeyer, Inc.,* No. 76 Civ. 871 (S.D.N.Y. October 18, 1976) (Cannella, J.); *Rich v. Touche Ross & Co.,* 68 F.R.D. 243, 246 (S.D.N.Y.1975) (Brieant,

J.), *quoting* 2A J. Moore, *Federal Practice* ¶ 9.03 at 1925–28.

5. In that the Court finds that plaintiff fails to state a claim under § 14(e), it is unnecessary to rule on plaintiff's standing. The Court notes, however, that the recent opinion of the Supreme Court in *Piper v. Chris-Craft Indus., Inc.,* —— U.S. ——, —— ———, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), casts doubt on whether a target corporation has standing to bring a private action for damages pursuant to this section. *But see* at ——, 97 S.Ct. 926.