Ginn **BIESENBACH**, Joseph Levin,
Henry Sharman and Lisa B. White

v.

John H. **GUENTHER**, Jr., A. T. Consoli,
Richard E. Hunter, Fred Parquette,
Leon Prince and Heidelberg, Inc.

Civ. A. No. 77–1073.

United States District Court,
E. D. Pennsylvania.

Feb. 15, 1978.

Joel C. Meredith, Bruce K. Cohen, Meredith, Cohen & Kepler, Philadelphia, Pa., for plaintiffs.

Thomas N. O'Neill, Jr., Jeffrey R. Lerman, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendants.

**MEMORANDUM**

RAYMOND J. BRODERICK, District Judge.

This case presents a question concerning the reach of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder. Before the Court is defendants' motion to dismiss plaintiffs' amended complaint pursuant to Fed.R. Civ.P. 12(b)(6). For the reasons hereinafter set forth, defendants' motion will be granted.

Plaintiffs' allegations, which for the purposes of this motion must be accepted as true and considered in a light most favorable to the plaintiffs, are summarized as follows:

Plaintiffs are minority shareholders and at or about the times relevant to this litigation were on the Board of Directors of Heidelberg, Inc. ("Heidelberg"), a Pennsylvania corporation. The individual defendants constituted a majority of the Board of Directors of Heidelberg at or about the times the events hereinafter described took place.

On August 18, 1972, a loan agreement was reached between the individual defendants and Heidelberg, whereby $500,000 was lent to Heidelberg, and the individual defendants received a second lien on Heidelberg's property. Over the objections of various shareholders, the individual defendants, by use of their control of the Board of Directors, arranged the terms of the loan so that the individual defendants received interest at a rate of 10% in cash, land or shares of Heidelberg, and received in repayment 10% of the principal amount of the loan in shares of Heidelberg. In May, 1973, by use of their control of the Board of Directors (and over the objections of various shareholders), the individual defendants increased the interest on the loan to a rate of 4% over the prime interest rate. On August 28, 1974, the individual defendants caused the number of members of the Board of Directors of Heidelberg to be reduced from 19 to 7 in order to further

consolidate their control of the corporation and eliminate opposition to their plans and transactions.

In December, 1975, a second loan agreement was reached between the individual defendants (except Hunter) and Heidelberg, whereby $266,760 was lent to Heidelberg in return for which (and over the objections of various shareholders of Heidelberg) the individual defendants, by use of their control of the Board of Directors, arranged the terms of the loan so that they received interest at the rate of 15% in cash, land or shares of Heidelberg, and received in repayment of the principal 15% of the loan in shares of Heidelberg.

In November, 1976, the Board of Directors called the annual shareholder meeting at which a plan to authorize an additional 500,000 shares of $.50 par value common stock was to be considered. At the meeting, held on November 22, 1976, it was announced to the shareholders, for the first time, that Heidelberg was planning to authorize 1,000,000 additional shares. The plan was approved by a majority of the shares voting at the shareholders' meeting.

Plaintiffs bring this action derivatively. They allege that the foregoing activities were part of an unlawful combination and conspiracy, pursuant to which the individual defendants, who were directors of Heidelberg, engaged in acts, transactions, practices and a course of business which constituted a fraud and deceit upon plaintiffs and Heidelberg in violation of § 10(b) of the Act, in that the individual defendants at all times represented to the shareholders that the transactions were in the best interests of the shareholders and Heidelberg. Plaintiffs contend that such representations were false and misleading in that the transactions were not in the best interests of the shareholders or Heidelberg. The plaintiffs also contend that the individual defendants, by use of their control of the Board of Directors, caused additional shares of Heidelberg to be issued at the fraudulently low price of $.50 per share for the purpose of enabling the individual defendants to gain complete control of Heidelberg.

Plaintiffs neither bought nor sold any securities within the meaning of the Act in connection with the alleged fraudulent transactions. We conclude, therefore, that the plaintiffs lack standing to assert a claim on their own behalf, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). It appears, however, that since the plaintiffs allege that they bring this action on behalf of Heidelberg, the corporation, they do have standing to assert a cause of action on a derivative basis, assuming that there has been a purchase or sale of securities within the meaning of the Act. *Wright v. Heizer Corp.*, 560 F.2d 236, 246–47 (7th Cir. 1977); *Pappas v. Moss*, 393 F.2d 865, 870 (3d Cir. 1968); *Harriman v. E. I. DuPont de Nemours & Co.*, 411 F.Supp. 133, 156 (D.Del. 1975); cf. *Blue Chip Stamps*, 421 U.S. at 738, 95 S.Ct. 1917; *Kuzmickey v. Dunmore Corp.*, 420 F.Supp. 226, 229 (E.D.Pa.1976). As stated by the court in *Goldberg v. Meridor*, 567 F.2d 209, 215 (2d Cir. 1977):

> [t]here can be no doubt that the Securities Exchange Act "protects corporations as well as individuals who are sellers of a security" and that it is irrelevant that "the transaction is not conducted through a securities exchange or an organized over-the-counter market."

Section 10(b) of the Act prohibits the use of "any manipulative or deceptive device or contrivance" in contravention of the rules of the Securities and Exchange Commission. In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Court recently held that a cause of action under Rule 10b–5 exists "only if the conduct alleged can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." *Id.* at 1301. The Court defined what it meant by the term "manipulation":

> Manipulation is "virtually a term of art when used in connection with securities markets." . . . The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity. . . .

[W]e do not think [Congress] would have chosen this "term of art" if it had meant to bring within the scope of § 10(b) instances of corporate mismanagement such as this, in which the essence of the complaint is that shareholders were treated unfairly by a fiduciary.

*Id.* at 1302. Plaintiffs' complaint contains no allegations which can be construed as being within the above quoted definition of manipulation. *See Lavin v. Data Systems Analysts, Inc.,* 443 F.Supp. 104 (E.D.Pa. 1977).

As to deception, the plaintiffs make the following allegations: (1) that they were deceived into believing that the transactions were in the best interests of the shareholders and the corporation, and (2) that the individual defendants, as directors, used their positions to cause additional shares to be issued at a fraudulently low price enabling them to gain complete control of the corporation. Assuming that such allegations are true (as we must in considering a motion to dismiss), the plaintiffs have alleged violations of the individual defendants' fiduciary duties as directors of the corporation. As such, these allegations might well support a cause of action under the laws of Pennsylvania. However, since the Supreme Court's pronouncements in *Santa Fe,* such allegations standing alone do not state a cause of action under Section 10(b) of the Act, or Rule 10b–5 promulgated thereunder.

Plaintiffs in *Santa Fe* were minority shareholders who brought a derivative action on behalf of the corporation alleging that the defendants, who were officers and directors of the corporation, had effected a merger which froze out the plaintiffs for a "wholly inadequate price." Plaintiffs alleged that the valuation placed on their shares by defendants was a "fraudulent appraisal . .. . in order to lull the minority shareholders into erroneously believing that [the corporation] was generous." 97 S.Ct. at 1297. In holding that plaintiffs had not alleged a cause of action under Section 10(b) of the Act or Rule 10b–5, the Supreme Court stated:

The reasoning behind a holding that the complaint in this case alleged fraud under Rule 10b–5 could not be easily contained. It is difficult to imagine how a court could distinguish, for purposes of Rule 10b–5 fraud, between a majority stockholder's use of a short-form merger to eliminate the minority at an unfair price and the use of some other device, such as a long-form merger, tender offer, or liquidation, to achieve the same result; or indeed how a court could distinguish the alleged abuses in these going private transactions from other types of fiduciary self-dealing involving transactions in securities. The result would be to bring within the Rule a wide variety of corporate conduct traditionally left to state regulation. In addition to posing a "danger of vexatious litigation which could result from a widely expanded class of plaintiffs under Rule 10b–5," *Blue Chip Stamps v. Manor Drug Stores* . . . this extension of the federal securities laws would overlap and quite possibly interfere with state corporate law. Federal courts applying a "federal fiduciary principle" under Rule 10b–5 could be expected to depart from state fiduciary standards at least to the extent necessary to ensure uniformity within the federal system. Absent a clear indication of congressional intent, we are reluctant to federalize the substantial portion of the law of corporations that deals with transactions in securities, particularly where established state policies of corporate regulation would be overridden. As the Court stated in *Cort v. Ash* [422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26] . . . "Corporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law *expressly* requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation." 422 U.S. at 84, 95 S.Ct. at 2091 (emphasis added).

We thus adhere to the position that "Congress by § 10(b) did not seek to regulate transactions which constitute no

more than internal corporate mismanagement."

*Id.* at 1303–04 (footnote omitted). Since *Santa Fe,* it appears that a cause of action pursuant to Section 10(b) of the Act is not stated by mere allegations that the directors of a corporation, in order to enhance their own financial position, have violated their fiduciary obligations to the corporation and/or its shareholders. *See Tyco Laboratories, Inc. v. Kimbal,* 444 F.Supp. 292, 297 (E.D.Pa.1977). The Second Circuit, in three opinions, appears to have taken somewhat different positions concerning the breadth of *Santa Fe.* In *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078 (2d Cir. 1977), the court, through Judges Lumbard, Mansfield and Gurfein (per Judge Mansfield), held:

> To the extent that appellants seek recovery on the ground that DASA's directors breached an alleged fiduciary duty to deal fairly with its debenture holders . . . it is clear since the Supreme Court's recent decision in *Green v. Santa Fe Industries, Inc.* [citations omitted], that no such duties are imposed by federal law upon corporate directors and that violation of any such state-law fiduciary duties, including non-disclosure of conflicts of interest or unfairness of a conversion price, will not support a claim of constructive fraud under the [Act].

*Id.* at 1084 (footnote omitted).[1] In *Goldberg v. Meridor,* 567 F.2d 209 (2d Cir. 1977), a panel of the Second Circuit composed of Judges Friendly, Timbers and Meskill (per Judge Friendly), refused to interpret *Santa Fe* so broadly. The *Goldberg* court stated:

Assuming that, in light of the decision in [*Santa Fe*], the existence of "controlling influence" and "wholly inadequate consideration" . . . can no longer alone form the basis for Rule 10b–5 liability, we do not read *Santa Fe* as ruling that no action lies under Rule 10b–5 when a controlling corporation causes a partly owned subsidiary to sell its securities to the parent in a fraudulent transaction and fails to make a disclosure or, as can be alleged here, makes a misleading disclosure.

*Id.* at 217. Judge Friendly then went on to state what he felt was required to state a claim under Section 10(b) of the Act:

> We readily agree that if all that was here alleged was that [the corporation] had been injured by "internal corporate mismanagement", no federal claim would have been stated. But a parent's looting of a subsidiary with securities outstanding in the hands of the public in a securities transaction is a different matter; in such cases disclosure or at least the absence of misleading disclosure is required.

*Id.* at 221. And in *Cole v. Schenley Industries, Inc.,* 563 F.2d 35, 44 (2d Cir. 1977), a panel of the Second Circuit, composed of Judges Smith, Oakes and Carter[2] (per Judge Smith) held that in connection with a merger transaction, in the absence of a finding that there has been a material misrepresentation or a failure to disclose material facts, a Section 10(b) claim under the Act was not stated.

Under the most narrow reading of *Santa Fe* a cause of action pursuant to Section 10(b) of the Act or Rule 10b–5 must allege

---

1. Similarly, the court in Altman v. Knight, 431 F.Supp. 309 (S.D.N.Y.1977), granted a motion to dismiss for failure to state a claim under the Securities Exchange Act on a complaint in which it was alleged that the defendant directors violated the Act by causing their corporation to acquire a subsidiary as part of a scheme "to defeat a tender offer [which if successful] would have threatened their positions as directors and/or officers of [the corporation]." Plaintiff also alleged that the defendants stated that the acquisition would serve a valid business purpose when in actuality it was entered into solely to block the tender offer and serve the personal interests of the defendant directors. *Id.* at 311. The *Altman* court stated:

> What plaintiff's claim boils down to, insofar as the acquisition itself is concerned, is that the individual defendants, aided and abetted by defendant IU, breached their fiduciary duties to Anaconda when they voted to purchase Walworth for purely selfish motives at a grossly exaggerated price. This is precisely the kind of claim the Supreme Court in *Santa Fe* felt should be decided under state corporate law.

*Id.* at 314.

2. Sitting by designation.

more than a mere violation of one's fiduciary obligations to the corporation. *Goldberger v. Baker,* 442 F.Supp. 659, 664 (S.D. N.Y.1977). Therefore, after a careful review of the plaintiffs' amended complaint, we find that it contains no more than an allegation that the defendants violated their fiduciary obligations to the corporation and its shareholders. It is devoid of the essential allegations of either "manipulative" or deceptive" conduct as mandated in *Santa Fe*.[3]

Having determined that plaintiffs' federal claims must be dismissed, we have also determined that this Court should not consider plaintiffs' pendent state claims. Federal courts have the power to adjudicate claims based on state law if there is a federal claim of sufficient substance to confer subject matter jurisdiction on the court. *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 196 (3d Cir. 1976). However, as stated in *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), if the federal claims are dismissed before trial, the state claim should also be dismissed. We, therefore, decline to exercise jurisdiction over plaintiffs' state law claims and shall enter an Order dismissing plaintiffs' amended complaint.

---

**3.** Plaintiffs contend, citing Pappas v. Moss, 393 F.2d 865 (3d Cir. 1968), that their allegation that they were told by the individual defendants that issuing the stock at $.50 per share was fair when in fact this was a fraudulently low price is sufficient to state a cause of action under Section 10(b) of the Act. *Pappas,* a pre-*Santa Fe* case, was considered by the *Santa Fe* court in a footnote in which it stated: "We have been cited to a large number of cases in the Courts of Appeals, all of which involved an element of deception as part of the fiduciary misconduct held to violate Rule 10b–5." 430 U.S. 462, 474, 97 S.Ct. 1292, 1301 n.15, 51 L.Ed.2d 480. In the footnote it quoted and

summarized the following from the *Pappas* opinion: " 'if a "deception" is required in the present context [of Section 10(b) and Rule 10b–5], it is fairly found by viewing this fraud as though the "independent" stockholders were standing in the place of the defrauded corporate entity,' where the board of directors passed a resolution containing at least two material misrepresentations and authorizing the sale of corporate stock to the directors at a price below fair market value". The amended complaint in the instant case contains no allegations of a "material misrepresentation or material failure to disclose." *See Santa Fe,* 430 U.S. at 474, 97 S.Ct. at 1301. ·