**Harry W. VOEGE, Plaintiff,**

v.

**The MAGNAVOX COMPANY et al., Defendants.**

**Civ. A. No. 77–104.**

United States District Court,
D. Delaware.

Aug. 29, 1977.

Joseph A. Rosenthal, of Morris & Rosenthal, Wilmington, Del., for plaintiff; Charles Trynin, New York City, of counsel.

David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants.

## OPINION

STEEL, Senior District Judge:

This action was brought by a former stockholder of The Magnavox Company ("Magnavox") on his own behalf and on behalf of others as a class who were stockholders of Magnavox between June 27, 1975 and July 25, 1975. The defendants are Magnavox, North American Philips Corporation ("NAPC"), its subsidiary, North American Philips Development Corporation ("NAPDC") and other related corporations, as well as certain of their officers and directors whose conduct, later detailed, is alleged to have violated Sections 10(b)[1] and 14(a)[2] of the Securities Exchange Act of 1934 (the "Act") and Rules 10b–5[3] and 14a–9[4] promulgated thereunder.

1. Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, provides in relevant part:

*Manipulative and deceptive devices*

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

2. The proxy solicitation for the Magnavox stockholder meeting at which the merger with Newcorp was voted upon was made subject by Section 14(a), 78 U.S.C. § 78n, to the requirements of the proxy solicitation rules. Rule 14a–9(a), 17 CFR § 240.14a–9(a), provides:

"No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ."

3. Rule 10b–5, 17 CFR 240.10b–5 provides:

*Employment of manipulative and deceptive devices.*

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

4. *See* note 2 *supra.*

The complaint alleges that the claims of the minority stockholders of Magnavox as a class involve common questions of law, viz., whether Sections 10(b) and 14(a) of the 1934 Act and rules and regulations thereunder have been violated, whether the merger between T.M.C. Development Corp. ("Newcorp") and Magnavox described in the Proxy Statement was violative of the merger provisions of Section 251 of the Delaware Corporation Law, and whether the merger and other transactions described in the complaint were fraudulent and unfair and constitute a breach of fiduciary and common law obligations owed by defendants to the members of the class.

For relief the complaint seeks a declaration that the merger of Newcorp and Magnavox was invalid, that the Proxy Statement of Magnavox used in soliciting votes for the merger be declared to have violated Sections 10(b) and 14(a) of the Act and rules thereunder, and damages and certain costs.

Jurisdiction is alleged to exist under Section 27 of the Act, 15 U.S.C. § 78aa, and by reason of pendent jurisdiction.

Plaintiff's motion for summary judgment on the first count, filed in advance of an answer, is before the Court for decision.

The complaint is based on actions taken by NAPC to acquire 100% of the stock of Magnavox in 1974 and 1975. The first step taken by NAPC was to organize NAPDC as a wholly-owned subsidiary, and through it, by means of a tender offer on August 29, 1974, to acquire 84.9% of the outstanding Magnavox common stock. The price paid was $9.00 per share. Following the tender offer NAPC acquired the rest of Magnavox by means of a freeze-out merger. To accomplish this Newcorp was organized as a wholly-owned subsidiary of NAPDC. Then, on July 24, 1975, pursuant to an agreement of merger adopted by both corporations, Newcorp and Magnavox were merged. Under the terms of the merger agreement the holders of 15.1% of the Magnavox stock were given $9.00 per share in exchange for their stock, or left to their appraisal rights under 8 Del.C. § 262.

The complaint alleges that the foregoing actions were taken pursuant to a conspiracy among the defendant officers and directors, that the purpose of the merger of Newcorp and Magnavox was to freeze out the minority shareholders of Magnavox for the benefit of the corporations in which defendants were interested, that the merger was brought about solely by the interested votes of shares controlled by the conspirators on "self-serving, self-dealing terms", and as a result the minority shareholders were compelled either to surrender their shares at "the grossly inadequate price" of $9.00 per share, in cash, or to seek an appraisal. The merger is alleged to have had no purpose so far as Magnavox is concerned except to enable NAPDC to acquire a 100% interest in Magnavox. The complaint alleges further that the merger was not authorized by Section 251 or any other pertinent provision of Delaware law, was thus illegal, invalid, and ineffective, and that the false and misleading representations and concealments to the contrary in the Proxy Statement fraudulently induced the minority shareholders to surrender their shares for $9.00 in cash and thereby to be frozen out of Magnavox. The complaint alleges that the foregoing conduct on the part of the defendants constituted a violation of Sections 10(b) and 14(a) of the Act and the rules thereunder.

### The Claim Under Section 10(b)

Plaintiff, in Count I of the complaint, does not distinguish between allegations which purport to support a claim under Section 10(b) and those upon which a claim under Section 14(a) is based. Viewing the allegations in Count I as a whole, a construction most favorable to plaintiff, the complaint charges defendants with violating all three subparagraphs of Rule 10b–5.

Both the decision and reasoning in *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97

S.Ct. 1292, 51 L.Ed.2d 480 (1977) bear importantly upon the question whether Count I of the complaint states a cause of action under Rule 10b–5. In it the Court held that the language of Section 10 indicates that Congress did not intend that conduct should constitute a violation of Section 10(b) unless it involved manipulation or deception. Because the Court found that the allegation of fraud and fiduciary breach in the complaint could not fairly be viewed as manipulative or deceptive within the meaning of the statute, the Court held that it failed to state a claim under Section 10(b) and Rule 10b–5.

The importance of the *Santa Fe* decision to the instant case requires that it be discussed in detail. The case involved a "short form" merger under Section 253 of the Delaware Corporation Law. Under that section Kirby Lumber Company had been merged into Santa Fe Industries, the owner of 95% of the Kirby stock. Under the merger terms minority stockholders of Kirby were to receive $150 a share. Plaintiffs, who were minority stockholders of Kirby, objected to the merger and brought suit in federal court to set the merger aside and to recover the difference between $150 per share and the alleged fair market value of $772,[5] claiming that the purpose of the merger was to freeze out the minority by paying them a wholly inadequate price. Plaintiffs claimed that the action of the directors constituted a "device, scheme or artifice to defraud" and that they had engaged in "an act, practice or course of business which operates or would operate as a fraud [upon the Kirby minority] in connection with the purchase or sale of [a] security."[6] The District Court dismissed the complaint for failure to state a claim upon which relief could be granted. 391 F.Supp. 849 (S.D.N.Y.1975).

As the District Court understood the complaint, it rested upon two distinct grounds. The first was that Rule 10b–5 was violated because the merger was for the sole purpose of eliminating the minority from the company and was without a justifiable business purpose and because the merger was undertaken without prior notice to the minority shareholders. The second ground was that the low valuation placed upon the shares in the cash exchange offer was itself a fraud which was actionable under Rule 10b–5. In rejecting the first ground the District Court reasoned that Delaware law required neither a business purpose for a short form merger nor prior notice to the minority stockholders and that Rule 10b–5 did not override the provisions of state corporate law by independently placing a duty on the majority not to merge without a justifiable business purpose. The District Court rejected the second ground because it felt that adequate information had been supplied to the stockholders to enable them to place their own judgment on the sufficiency of the price which the merger terms provided.[7]

Upon appeal the Second Circuit agreed that the complaint did not allege a misrepresentation or non-disclosure with respect to the value of the stock and declined to rule that a claim of gross under-valuation itself would suffice to make out a Rule 10b–5 case. Nonetheless, the Court of Appeals, with one dissent, reversed the District Court and held that neither misrepresentation nor non-disclosure was a necessary element of Rule 10b–5 action, and that the rule reached "breaches of fiduciary duty

---

**5.** Plaintiffs' claim that their stock was worth $772 per shares was based upon the fair market value of Kirby's physical assets which was revealed by an appraisal by Morgan, Stanley & Co., sent to the stockholders of Kirby.

**6.** These claims were based upon paragraph (a) and (c) of Rule 10b–5.

**7.** This is the construction which the Supreme Court in *Santa Fe Industries, Inc. v. Green*, placed upon the District Court decision, 430 U.S. at 468–472, 97 S.Ct. at 1298–1300.

by a majority against minority shareholders without any charge of misrepresentation or lack of disclosure." 533 F.2d 1283, 1287 (2d Cir. 1976).[8]

Upon appeal the Supreme Court reversed. It said:

"The language of § 10(b) gives no indication that Congress meant to prohibit any conduct not involving manipulation or deception. . . . Thus the claim of fraud and fiduciary breach in this complaint states a cause of action under any part of Rule 10b–5 only if the conduct alleged can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." 430 U.S. at 473, 97 S.Ct. at 1300.

After having found that the complaint alleged no manipulation or deception the Supreme Court continued:

"[T]he cases do not support the proposition, adopted by the Court of Appeals below and urged by respondents here, that a breach of fiduciary duty by majority stockholders, without any deception, misrepresentation, or nondisclosure, violates the statute and the Rule." 430 U.S. at 476, 97 S.Ct. at 1302.

In Part IV of the opinion the Court said:

"The language of the statute is, we think, 'sufficiently clear in its context' to be dispositive here, Ernst & Ernst, 425 U.S. 185 at 201, 96 S.Ct. 1375, 47 L.Ed.2d 668; but even if it were not, there are additional considerations that weigh heavily against permitting a cause of action under Rule 10b–5 for the breach of corporate fiduciary duty alleged in this complaint. . . . ."

After referring to a "first factor" the Court said:

"A second factor in determining whether Congress intended to create a federal cause of action in these circumstances is 'whether' the cause of action [is] one traditionally relegated to state law . . . ."

Piper v. Chris-Craft Industries, Inc., 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124, quoting Cort v. Ash, 422 U.S. 66 at 78, 95 S.Ct. 2080, 45 L.Ed.2d 26. The Delaware Legislature has supplied minority shareholders with a cause of action in the Delaware Court of Chancery to recover the fair value of shares allegedly undervalued in a short-form merger. . . . Of course, the existence of a particular state law remedy is not dispositive of the question whether Congress meant to provide a similar federal remedy, but as in Piper and Cort, we conclude that 'it is entirely appropriate in this instance to relegate respondent and others in his situation to whatever remedy is created by state law.' 422 U.S. at 84, 95 S.Ct. 2080; 430 U.S. 1, 97 S.Ct. 926.

. . . Absent a clear indication of congressional intent, we are reluctant to federalize the substantial portion of the law of corporations that deals with transactions in securities, particularly where established state policies of corporate regulation would be overridden." [9] 430 U.S. at 478, 97 S.Ct. at 1303.

Eight of the Supreme Court Justices concurred (Mr. Justice Brennan dissented) in the Santa Fe decision. Two of the eight Justices (Messrs. Blackmun and Stevens) found the discussion in Part IV to be unnecessary and disassociated themselves from it. Six Justices concurred in the views expressed in Part IV of the opinion.

The reasoning of the Santa Fe opinion would require denial of the plaintiff's motion for summary judgment under Rule 10b–5, but for one ostensible distinction between it and the present case. The complaint in Santa Fe failed to allege a misrepresentation or concealment, which would bring into play paragraph (b) of Rule 10b–5, as does the present case. Undoubtedly the Supreme Court found the absence of misrepresentations and concealment to be of

---

8. This is the construction which the Supreme Court of the United States in Santa Fe Industries, Inc. v. Green, placed upon the decision of the Second Circuit, 430 U.S. at 468–472, 97 S.Ct. at 1298–1300.

9. See also footnote 6, 430 U.S. at 468–472, 97 S.Ct. at 1298–1300.

critical importance, stating that the fundamental purpose of the Act was to implement a philosophy of full disclosure and that once full and fair disclosure has occurred, the fairness of the terms of the transaction was at most a tangential concern of the statute.

By contrast the complaint in the instant case repeatedly alleges that the Proxy Statement contained misrepresentations and concealments of a material kind with reference to the merger.[10] The alleged misrepresentations are said to be statements that the merger was authorized by Section 251 of the General Corporation Law of Delaware, and that under the merger minority stockholders of Magnavox had no choice but either to surrender their shares for $9.00 per share or seek an appraisal. The alleged concealments are simply the converse; viz., the Proxy Statement failed to tell the stockholders that the merger was not authorized by Section 251 of the Delaware Corporation Law and that they were not compelled either to surrender their shares for $9.00 per share or seek an appraisal under the Delaware statute.

■ The difference between the complaint in *Santa Fe*, which contained no allegation of misrepresentation, and the instant one, which does, raises the question whether the asserted validity and effect of the merger in the Proxy Statement, even if untrue in point of law, make it an untrue statement within the meaning of Rule 10b–5(b). It can be so considered only if it amounts to a manipulative or deceptive device or contrivance within the meaning of Section 10(b) of the Act. The untrue statements and omissions to state material facts which Rule 10b–5(b) are concerned with are limited to those which constitute manipulative or deceptive devices. Section 10(b) of the Act authorizes the Commission to promulgate rules in the public interest to protect investors only against manipulative or deceptive devices or contrivances. The caption of Rule 10b–5—Employment of Manipulative and Deceptive Devices—likewise discloses that the rule was drafted solely to have this limited application.

■ For plaintiff to characterize the statements in the Proxy Statement as "misrepresentations" and "concealments" does not make them so within the intendment of Rule 10b–5(b). The assertion that the merger was authorized and had the effect attributed to it under Delaware law was based upon the opinion of the Delaware firm of Morris, Nichols, Arsht & Tunnell, a fact which the Proxy Statement disclosed.[11] Plaintiff does not suggest that the attorneys who gave the opinion to Magnavox were incompetent, that they had failed to follow Delaware decisions which were at variance with their opinion, or that they were disqualified to give the opinion because of interest or otherwise.[12] The only

10. None is claimed or could be with respect to the tender offer. The offer stated that with respect to Magnavox shares which were not acquired pursuant to the tender (¶ 10, Complaint):

"NAPC would consider whether to acquire the remaining Shares through open market purchases, through a tender or exchange offer, or by any other means deemed advisable by it or whether to propose a merger, a sale or exchange of assets, liquidation or some other transactions regarding the Company". and that:

"Any such purchase or transaction may be on terms different from those of this offer and may include the payment of more or less cash or the exchange of securities."

11. While the opinion of the Magnavox attorneys, as disclosed in the Proxy Statement, makes no reference to any particular section of the Delaware law, any contention that it was not based upon Section 251 would be unsupportable. The only other statute of the Delaware law which authorizes mergers and the payment of cash to minority stockholders is Section 253 which provides for the "short-form" merger. It applies only to a merger of a subsidiary into a parent owning at least 90% of the stock of the subsidiary or under similar circumstances the merger of a parent into a subsidiary. The merger of Newcorp into Magnavox meets neither of these requirements and could not have been, and did not purport to be, authorized by Section 253.

12. After the Morris, Nichols, Arsht & Tunnell opinion was rendered the validity of the Newcorp-Magnavox merger was sustained in *Singer v. Magnavox*, 367 A.2d 1349 (Del.Ch.1976). This decision is presently on appeal before the Delaware Supreme Court.

reason that plaintiff alleges that the statements in the Proxy Statement as to the validity and effect of the merger are untrue is because plaintiff entertains a view of the law which differs from that of Magnavox's attorneys. A proxy statement, based upon the opinion of properly qualified outside counsel which asserts that a corporation has the power under Delaware law to consummate a merger, even if the opinion is wrong, cannot be deemed to be a misrepresentation or concealment of a material fact under Rule 10b–5, inasmuch as the statement is not a manipulative or deceptive device.

■ The parties dispute whether the assertions in the Proxy Statement are in fact true or false. That issue cannot be resolved without this Court determining questions of Delaware law involving the legality of corporate transactions and affairs that have long been regulated by state corporation law and dealt with by the state courts.[13] This Court cannot undertake to decide them in connection with a Rule 10b–5 claim without disregarding the restrictive philosophy expressed in Part IV of the *Santa Fe* decision.

Count I fails to allege a violation of Rule 10b–5.

### The Claim Under Rule 14a–9

■ Plaintiff's argument that the Proxy Statement violates Rule 14a–9 rests solely on the claim that its statement concerning the validity and effect of the merger was erroneous. The complaint does not attack the bona fides of Magnavox in accepting the opinion of a qualified attorney and basing its Proxy Statement upon it. Plaintiff never called to the attention of Magnavox the argument which it now advances in this Court to support its claim

that the merger was illegal. Since plaintiff failed to do so Rule 14a–9 imposes no obligation upon Magnavox to embody in the Proxy Statement the contentions plaintiff now makes. *Ash v. L F E Corporation,* 525 F.2d 215 (3d Cir. 1975).

In *Ash* a meeting of stockholders had been called to vote upon a "new" pension plan. The plan in some instances allowed benefits to employees for prior services. A stockholder brought suit claiming that under Delaware law pension benefits for past services constituted a gift, were ultra vires, and that the failure of the Proxy Statement to disclose the fact violated Rule 14a–9. The District Court dismissed the complaint and the Court of Appeals affirmed. The latter Court said at p. 220:

"Ash has not in this action, or so far as we know elsewhere, sought an adjudication that the plan is ultra vires. Under Delaware law, if the corporation did lack capacity to adopt the plan he remained free to challenge it despite the vote of the stockholders. *See* 8 Del.Code Ann. tit. 8, § 124 (1975). Without passing on the merits of the contention that granting pension plan credits for past service went beyond the power of the corporation, we hold that the proxy statement did not violate Rule 14a–9 when it failed to disclose a legal theory with which the corporation did not agree and which was never called to its attention. The facts are disclosed. If a shareholder concludes from those facts that the pension plan is a subterfuge for a gift, he can take appropriate action both at the stockholder meeting and thereafter. No case has been called to our attention requiring disclosure of speculative issues of state corporation law in a proxy solicitation."

The complaint fails to state a cause of action for the violation of Rule 14a–9.

---

**13.** Paragraph 14(b) of the complaint alleged that mergers such as here involved "are not authorized by § 251 of the Delaware Corporation Law, are contrary to the prohibition of the taking of property without due process of law contained in the Federal and Delaware Constitutions, and are prohibited by Sections 151(b) and 160(3) [160(a)(3)] of the Delaware Corporation Law." The fact that plaintiff alleged

violations of the Federal Constitution is no bar to the consideration by a state court of the legality of action taken pursuant to its statutes, and the further consideration by it, if necessary, of whether the state statutes relied upon pass federal constitutional muster. State courts are competent to deal with federal constitutional questions provided they apply federal constitutional principles in deciding them.

*Pendent Jurisdiction*

■ While a Federal Court has the power under pendent jurisdiction to entertain a cause of action alleged under state law, whether it should do so is a matter of discretion. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Since the instant case is in the preliminary stage, defendants not yet having filed an answer, pendent jurisdiction should not be exercised. Furthermore, Count I does not purport to rest upon claims under state law but solely upon violations of Sections 10(b) and 14(a) and rules thereunder.

Plaintiff's motion for summary judgment under Count I should be denied.