Sidney HELFANT, Plaintiff,

v.

LOUISIANA & SOUTHERN LIFE
INSURANCE COMPANY et al.,
Defendants.

No. 77 C 2515.

United States District Court,
E. D. New York.

Oct. 16, 1978.

Mark S. Cash, New York City, for plaintiff.

Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov, New York City, by Franklin B. Velie, Margot A. Metzner, New York City, for defendants Ingram and Denegre.

Sullivan & Cromwell, New York City, by Marvin Schwartz, Paul P. Colborn, New York City, for defendant Alex. Brown & Sons.

Cleary, Gottlieb, Steen & Hamilton, New York City, by George Weisz, Richard D. Weiss, New York City, for remaining defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This action was brought by a former holder of 100 shares of Louisiana & Southern Insurance Company (L&S) stock, who seeks to maintain the action on his own behalf and on behalf of a class of public shareholders of L&S, other than defendants, between August 19, 1977 and October 3, 1977. The defendants are L&S; The Charter Company (Charter); New Charter Holding Company (Charter Holding), Charter's wholly-owned subsidiary; New Charter Life Insurance Company (NEWCO), the wholly-owned subsidiary of Charter Holding; and Alex. Brown & Company, an investment banking firm. The complaint also names as defendants certain officers, directors and shareholders of Charter and L&S, who with the corporate defendants have allegedly violated Sections 10(b), 14(a) and 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a), 78n(e), the rules and regulations of the Securities Exchange Commission promulgated thereunder, and common law fiduciary principles in connection with a merger of L&S into NEWCO.

Jurisdiction is premised on Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and on principles of pendent jurisdiction. Thus, this court's jurisdiction is predicated upon the existence of a claim cognizable under the federal securities laws.

Defendants move pursuant to Rules 9(b), 12(b)(1) and 12(b)(6), F.R.Civ.P., for an order dismissing the complaint for failure to state the circumstances constituting fraud with adequate particularity, for lack of subject matter jurisdiction, and for failure to state a claim upon which relief may be granted. In the alternative, defendants move, pursuant to Title 28, U.S.C. § 1441(a), for an order transferring the action to the United States District Court for the Middle District of Florida.

The allegations of the complaint, which must of course be accepted as true at this stage of the proceedings, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), are based on actions taken by defendants to acquire 100% of the issued and outstanding shares of L&S stock. It is alleged that in August 1975 Charter became owner of approximately 51% of the shares of L&S. Between May and December 1976, an unidentified "affiliate" of Charter purchased approximately 20,000 shares of L&S on the open market and subsequently transferred those shares to Charter's wholly-owned subsidiary, Charter Holding. On March 16, 1977, Charter transferred all its shares of L&S to Charter Holding, thereby consolidating the L&S shares in Charter Holding.

The complaint further alleges that in 1977, the defendants caused NEWCO to be incorporated for the sole purpose of effecting a merger of NEWCO with L&S. The written merger agreement provided, among other things

"that the directors of L&S at the effective time of the Merger will be directors of the surviving corporation; that on consummation of the Merger the holders of all of the shares of L&S stock except

CHARTER HOLDING and L&S OPTION SHARE CORPORATION shall receive payment in cash of $6.00 per share; that the shares of NEWCO's common stock then issued and outstanding will be converted into an equal number of shares of L&S common stock and that CHARTER HOLDING will make available to NEWCO sufficient funds to cover the required payment prior to the effective time of the Merger." (Complaint ¶ 28.) In addition, defendants Denegre, a director and shareholder of L&S, and Ingram, a shareholder of L&S, entered into a "Purchase Agreement" with L&S on August 29, 1977, pursuant to which Denegre exchanged 19,316 shares of L&S common stock for debentures to be issued by L&S in the principal sum of $212,476, and Ingram exchanged 50,000 shares for debentures in the principal sum of $550,000.[1] On or about September 1, 1977, L&S issued to stockholders including plaintiff a proxy statement setting forth the terms and conditions of the merger and the transactions with defendants Denegre and Ingram.

The complaint alleges that the foregoing actions were taken in furtherance of a "combination, conspiracy, device and scheme to acquire sole control of L&S at a price which would be highly advantageous to the defendants but unfair and damaging to the shareholders of L&S other than defendants" (Complaint ¶ 26); that the sole purpose of effecting a merger of NEWCO with L&S was to "freeze out" the shareholders of L&S, other than the defendants; and that the proxy statement itself contained misstatements and omissions that made it misleading and fraudulent, namely statements that the price of $6.00 per share to L&S shareholders was fair and equal in value to the debentures given certain defendants, and an omission in failing to disclose that there was no valid business purpose for the merger. Without specifying which conduct is purported to support a claim under Section 10(b) and which is to support the claims under Sections 14(a) and (e), plaintiff alleges that this course of conduct violated the federal securities laws.

### The Section 10(b) Claim

Count I of the complaint alleging violations of this section and Rule 10b–5 promulgated thereunder will state a claim only if it satisfies the spirit of and principles enunciated in *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Defendants argue that *Santa Fe* mandates dismissal of the complaint. While conceding its applicability, plaintiff contends that his complaint fully satisfies the requirements set forth by the Court. In *Santa Fe,* plaintiff alleged, in the context of a short-form merger pursuant to Delaware law, that defendants fraudulently undervalued plaintiff's stock and lacked a justifiable business purpose for "freezing out" the minority shareholders. 97 S.Ct. at 1297. The plaintiff did not allege, however, any material misrepresentation or omission of fact. The Court concluded, relying on *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), that a cause of action is stated under Rule 10b–5 "only if the conduct alleged can be fairly viewed as 'manipulative' or 'deceptive' within the meaning of the statute," *id.* at 1301, and held that plaintiff's allegations failed to state a claim under the federal securities law. The Court found that

"on the basis of the information offered, minority shareholders could either accept the price offered or reject it and seek appraisal in the Delaware Court of Chancery. Their choice was fairly presented, and they were furnished with all the relevant information on which to base their decision." 97 S.Ct. at 1301.

■ Thus, it is now beyond question that a claim of fraud or breach of fiduciary duty will only state a cause of action under Rule 10b–5 where the acts alleged are violative of the philosophy of full disclosure underlying the 1934 Act. Allegations questioning

---

1. The debentures provided for payment in five equal annual installments commencing on the fifth anniversary of their issuance, with interest on the unpaid balance at the rate of 6% per annum payable quarterly.

the fairness of a transaction or suggesting breach of duty by a fiduciary, while perhaps stating valid claims under State law, are insufficient after *Santa Fe.* See *Cole v. Schenley Industries, Inc.,* 563 F.2d 35, 43–44 (2 Cir. 1977); *Goldberg v. Meridor,* 567 F.2d 209, 218 (2 Cir. 1977); *Goldberger v. Baker,* 442 F.Supp. 659 (S.D.N.Y.1977).

In *Cole v. Schenley, supra,* a minority shareholder of Schenley brought suit under Sections 10(b) and 14(a), challenging the terms of a merger. With respect to plaintiff's 10(b) claim, the Court of Appeals for this circuit dismissed the complaint holding that in the absence of a "material misrepresentation or a failure to disclose material facts," the claim must fail. 563 F.2d at 44. In *Goldberg v. Meridor,* a derivative action was brought challenging a transaction in which a subsidiary corporation had issued shares of its stock to its parent in exchange for assumption of all the parent's assets and liabilities, at terms allegedly unfair to the shareholders of the subsidiary. A different panel of the Court of Appeals found that disclosure was inadequate and that a proposed amended complaint would have alleged misrepresentation "at least in the sense of failure to state *material facts*" necessary in order to make the statements made, in light of the circumstances, not misleading. 567 F.2d at 218 & n.8 (emphasis added).[2] The court concluded that the nub of *Santa Fe*—full disclosure—was not satisfied and therefore the conduct attacked stated a claim under the section.

■ Here, however, plaintiff concedes that the proxy statement "set forth the terms and conditions of the merger and the transactions with defendants Denegre and Ingram." (Complaint ¶ 30.) Thus, plaintiff neither alleges that defendants failed to disclose any material matter nor claims that they disclosed the terms of the transactions in a misleading manner. Most important, he does not allege that the proxy statement did not provide him with the data necessary to exercise his independent business judg-ment. See *Santa Fe Industries, Inc. v. Green, supra* at 1301.

Plaintiff has in essence alleged only three misstatements or omissions as the bases of his claims. First, he contends that defendants fraudulently represented that the $6.00 merger price was fair and reasonable. (Complaint ¶¶ 36, 43(a).) Second, plaintiff claims that defendants fraudulently represented that the $6.00 merger price was "equal in value" to the debentures issued to Ingram and Denegre. (Complaint ¶¶ 36, 43(b).) Finally, he alleges that defendants omitted to disclose that the merger was effected solely to freeze out the public minority shareholders.

■ It appears that to the extent his complaint questions the fairness of the transaction, plaintiff now recognizes that *Santa Fe* precludes relief under Section 10(b). (Plaintiff's Memorandum at 4.) See *Goldberger v. Baker, supra* at 664. Similarly, plaintiff apparently recognizes that his allegation that he was frozen out without a justifiable business purpose, without more, is no longer a basis for a claim under the federal securities laws and is certainly an allegation of conduct traditionally relegated to State law. See *Santa Fe, supra* at 1303; *Cole v. Schenley Industries, Inc., supra* at 44; *Altman v. Knight,* 431 F.Supp. 309, 314 (S.D.N.Y.1977). With respect to these claims, plaintiff's remedies lie in the State courts.

In an effort to save his complaint, plaintiff argues that the opinion letter of Alex. Brown & Company, which accompanied the proxy statement and stated that firm's evaluation of the fairness of the transaction and the value of the debentures given to Ingram and Denegre, was a misrepresentation within the ambit of the federal securities laws. (Plaintiff's Memorandum at 6.) This, he contends, distinguishes his complaint from the one found insufficient in *Santa Fe.*

2. The district court had denied plaintiff the opportunity to amend his complaint for a second time.

While it is true that the absence of an allegation of a misrepresentation or omission was crucial to the conclusion reached in *Santa Fe,* the mere characterization of a statement as a "misrepresentation" is not sufficient to state a claim under Rule 10b–5. Plaintiff must plead facts sufficient to show that the alleged misrepresentation amounts to a manipulative or deceptive contrivance within the meaning of the Securities Exchange Act. See *Voege v. Magnavox,* 439 F.Supp. 935, 941 (D.Del. 1977). To hold that plaintiff's characterization of the Alex. Brown statement is sufficient to state a claim under Rule 10b–5 would render the restrictive philosophy of *Santa Fe* meaningless: plaintiffs would be able to recast their essentially State law claims under the rubric "misrepresentation" and acquire a federal cause of action. Since we conclude such is not the meaning of *Santa Fe,* we must dismiss unless Alex. Brown's statement can be fairly viewed as a manipulative or deceptive contrivance.

Plaintiff, however, alleges neither that Alex. Brown was unqualified to make its assessment nor that the firm acted in a manner unacceptable in the field. Plaintiff only concludes, in sweeping strokes and in vague overtones of conspiracy, that the evaluation was fraudulent.[3] Although plaintiff's allegations most certainly run afoul of the rule requiring fraud to be pleaded with particularity, F.R.Civ.P. 9(b), discussed *infra,* it is also apparent that his primary disagreement is with Alex. Brown's conclusion as to the value of the debentures

relative to the price offered to plaintiff for his shares. *Cf. Voege v. Magnavox, supra* at 941–42.

It is our conclusion that the opinion of an outside investment banking firm, which evaluates the merits of a particular transaction, cannot be considered a misrepresentation within the section without some allegation that the firm purposefully and intentionally caused a false statement to be issued or that the financial data upon which the firm based its opinion was false or omitted from the proxy statement. *Cf. Santa Fe Industries, Inc. v. Green, supra.* Standing alone, the Alex. Brown "misrepresentation" is hardly a manipulative or deceptive device. Since plaintiff admits that the defendants set forth the terms and conditions of the transactions, and apparently does not dispute the sufficiency of the disclosure, his complaint is indistinguishable from the one found insufficient in *Santa Fe.*[4]

Further, it is apparent that *Santa Fe* reaches beyond the context of a "short-form" merger. Plaintiff's attempt to so limit it by noting the merger there required no shareholder approval is undercut by two considerations. First, since plaintiff admits in his complaint that defendants had the votes necessary to effect the merger (Complaint ¶ 30), his position is, in effect, the same as the minority shareholders in *Santa Fe,* who were left to their appraisal remedies.[5] Second, the principles of *Santa Fe*

---

3. Plaintiff in fact makes no attempt to delineate Alex. Brown's participation in the fraudulent scheme other than to name him in the complaint.

4. Absent sufficient allegations of deception, it is unnecessary to reach the further issues of materiality or connection with plaintiff's alleged injury. It need only be noted that plaintiff does not allege the statement was material, thus leaving only to surmise the effect this "misrepresentation" had on plaintiff.

5. Plaintiff's argument that the issue of actionable fraud did not require the Court's attention in *Santa Fe* since the merger would have taken place despite any "misrepresentations" that might have been made cannot be accepted here. First, this argument bears only on causa-

tion, and defendants do not dispute that the proxy statement was an essential link in the transaction. See *Cole v. Schenley Industries, Inc., supra* at 39. Second, plaintiff's argument reduces *Santa Fe* to mere dictum. If plaintiff is suggesting that *Santa Fe* should be limited to cases in which "meaningful" shareholder votes are involved, we would be bound to hold him to his statement in his brief that his votes here were indeed necessary. (Plaintiff's Memorandum at 7.) *Santa Fe* would then require dismissal.

In any event, the exercise of appraisal rights was clearly a business judgment required in *Santa Fe,* as here (see Defendants' Memorandum at 1), and we agree with defendants that the holding in *Santa Fe* was not dictum and requires allegations of deception, misrepresen-

have been applied to a variety of alleged securities law violations, some involving no merger at all. See, e. g., *Biesenbach v. Guenther,* 446 F.Supp. 98 (E.D.Pa.1978); *Lavin v. Data Systems Analysts, Inc.,* 443 F.Supp. 104 (E.D.Pa.1977); *Goldberger v. Baker,* 442 F.Supp. 659 (S.D.N.Y.1977). Thus, this court declines to limit *Santa Fe* to its particular facts and finds that its spirit mandates dismissal of the complaint.

### The Section 14(a) and (e) Claims

The sufficiency of plaintiff's claims in Count II of his complaint requires little comment. Since the language of Sections 14(a) and (e) is similar to that contained in Section 10(b) and Rule 10b–5, the principles of *Santa Fe* are fully applicable and preclude plaintiff's claims. See *Marshel v. AFW Fabric Corp.,* 441 F.Supp. 299, 300 (S.D.N.Y.1977). The courts have so held in practice. See, e. g., *Browning Debenture Holders' Comm. v. DASA Corp.,* 560 F.2d 1078 (2 Cir. 1977) (Section 14(a) claim); *Altman v. Knight,* 431 F.Supp. 309 (S.D.N.Y. 1977) (Section 14(e)).

### Application of Rule 9(b)

■ Finally, plaintiff's complaint must be dismissed as to the individual defendants for failure to satisfy the pleading requirements of Rule 9(b), F.R.Civ.P., which requires the circumstances constituting fraud to be stated with particularity. Rule 8(a), F.R.Civ.P., does not obviate that requirement. Claims of fraud must be pleaded with greater particularity to protect against baseless complaints. This not only weeds out unmeritorious strike suits, but also protects defendants from the harm to their reputations that follows charges of serious wrongdoing. See *Felton v. Walston,* 508 F.2d 577, 581 (2 Cir. 1974); *Segal v. Gordon,* 467 F.2d 602, 607 (2 Cir. 1972). Thus, conclusory allegations of fraudulent conduct or deception are insufficient under the Rule without specific allegations of fact. See *Shemtob v. Shearson, Hammill & Co., Inc.,* 448 F.2d 442, 444 (2 Cir. 1971).

■ Neither is it sufficient to allege, in conclusory language tracing the language of Rule 10b–5, that defendants violated the Rule. See *Rich v. Touche Ross & Co.,* 68 F.R.D. 243 (S.D.N.Y.1975). To state a claim under Section 10(b), plaintiff must with sufficient particularity identify the misrepresentations allegedly made, the manner in which they are considered false, and the facts from which an inference of fraud by a *given* defendant may be drawn. *Jacobsen v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 521 (S.D.N.Y.1977). The complaint may not rely on blanket references to acts of all named defendants, since each is entitled to be apprised of the specific circumstances surrounding the conduct for which he is charged with fraud. *Jacobsen, supra* at 522.

■ Here the complaint is cast in vague terms of conspiracy, scheme and device, the general language of Rule 10b–5. Even under the liberal rules of pleading permitted by the Federal Rules, there are limits to which a court should be called to assess the sufficiency of a complaint. Bare bones allegations of conspiracy or fraudulent conduct without any supporting facts permit a court to dismiss the complaint. See *Segal v. Gordon, supra* at 607. "A complaint alleging fraud should be filed only after a wrong has reasonably believed to have occurred; it should serve to seek redress for a wrong, not to find one." *Id.* at 608.

Here there is little more than vague allegations that the individual defendants, particularly Denegre and Ingram, took part in a conspiracy to defraud the plaintiff. There are no factual allegations of any sort linking these defendants to the statements alleged to be actionable made by L&S.[6] Denegre is merely described in the complaint as a director and shareholder of L&S and a party to the Purchase Agreement. Ingram is merely described as a shareholder

---

tation or nondisclosure in 10b–5 actions involving either "short-form" or "long-form" mergers.

6. Instead, there is merely a vague reference to the control all the defendants exercised over the corporate affairs. (Complaint ¶ 34.)

of L&S and a party to the Agreement. There is no allegation that Ingram controlled L&S by virtue of his stock ownership. Nor was Denegre alleged to have used his position as a director to defraud the public shareholders. In essence, these defendants are asserted to have done no more than to have accepted debentures rather than cash for their L&S shares, which of course, without more, should raise no inference of impropriety. Thus, plaintiff's failure to delineate the extent of the participation of these defendants in any of the alleged misrepresentations or omissions results in an additional ground for dismissal of the complaint.[7]

Plaintiff's third count is a claim for breach of fiduciary duty under State law. Since plaintiff's federal claims have been dismissed, and since the Supreme Court has indicated that State court is the proper forum for claims of this nature, see *Santa Fe Industries, Inc. v. Green, supra,* there is no reason for this court to exercise its pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The court recognizes that it may not dismiss a complaint unless it fails to state a claim under any conceivable set of facts. See *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1974). Although the complaint in its current form falls far short of the pleading requirements of Rule 9(b), leave is granted to replead within twenty (20) days should plaintiff determine that a second effort would overcome the material deficiencies here pointed out.

Accordingly, defendants' motion to dismiss the complaint is granted.[8]

SO ORDERED.

---

7. It should also be noted that the general rule that fraud may not be pleaded on information and belief, unless the conduct is peculiarly within the knowledge of the adverse party, see *Schlick v. Penn Dixie Cement Corp.,* 507 F.2d 374, 379 (2 Cir. 1974), has been violated in this case. Plaintiff has pleaded no facts which would excuse him from this rule and must do so to warrant pleading in this manner.

8. In view of this disposition, it is unnecessary to consider defendants' alternative motion to transfer this case to the Middle District of Florida.